John J. Dillon, S.
The testatrix died on November 8, 1951, leaving a will which was admitted to probate on November 30, 1951. She was survived by a husband and two infant children. In her will the decedent gave her husband “ the life use of one-third (%) of my net estate ”, with the residue in trust for the benefit of the children, who were to receive one half of the principal when the youngest should reach 25 years of age, and the balance when the youngest reached 35 years. The Union and New Haven Trust Company was named as trustee and the husband and brother of the testatrix were named as executors. The brother renounced the appointment, and the husband qualified as sole executor. This is the first accounting.
In 1954 the husband commenced a proceeding for a construction of the will. Of the various questions presented, two are material here. The first was whether the gift of ‘ ‘ the life use ” of one third of the net estate to the husband imported a life estate or absolute ownership; the other was the meaning* of the term ‘ ‘ net estate. ’ ’ This court held that the husband received a life estate only, with the remainder passing to the trustee under the residuary clause of the will; and that “ net estate ” meant the gross estate (exclusive of certain Connecticut real estate specifically referred to in the will), diminished by the decedent’s debts, funeral and administration expenses but without deduction for estate taxes (Matter of Missett, 136 N. Y. S. 2d 923). A decree incorporating these determinations was made on November 29, 1954.
There were no further judicial proceedings until October 15, 1958, when the trustee instituted a compulsory accounting proceeding. On January 15, 1959, the executor was ordered to account by March 3, 1959. No account was filed. In August, 1959, the trustee moved to revoke the executor’s letters and for other relief. After various adjournments of the motion an arrangement was made whereby a substantial portion of the *763 estate assets were delivered by the executor to the trustee under a custodian arrangement pending the settlement of the account. The account was filed on January 14, 1960.
The accounting period is from November 30, 1951, to August 31,1959. The executor has charged himself with gross receipts of principal and income amounting to $411,315.83. In Schedule E he claims credit for distributions to legatees and to the trustee totalling $191,990.56. Of this amount securities having a value of $74,882.63 were transferred to the trustee on November 16, 1953, which represents all the bank has received to date in its capacity as trustee. The same schedule shows that the executor has paid himself $50,673.16 (subsequently amended to $48,-598.27), for what he describes as “ life use of %rd of net estate.” There is nothing in the account to indicate that any part of this amount is still available, although the executor was placed on notice by the decision of the court in 1954 that he had nothing more than a life estate and that the remainder was payable to the trustee for the benefit of the children. The executor also claims credit for the entire gross income of $60,819.77, allegedly for the support and maintenance of the two children. In this regard the account has been supplemented by an affidavit containing what purports to be a breakdown of the gross figure included in Schedule E of the account, but it would appear from the affidavit that the payments of income made by the executor include the maintenance of his own home and some items of personal benefit to the executor. Such payments were not necessarily improper because the executor was at all times entitled to the income from one third of the net estate. But it is clear that the income account has been improperly administered. The remainder of the income should have been segregated and paid over to the trustee, and then disbursed by the latter for the infants ’ benefit as directed by the will.
The special guardian and the trustee have interposed objections based chiefly on the facts already mentioned. One objection relates to the payment by the executor to himself as life tenant of $48,598.27 without furnishing security for the safety of the principal. It has been held that an executor is under a duty to exact a bond before delivering assets to a life tenant unless the will expressly dispenses with a bond or unless the life tenant has the right to invade principal (Matter of Richardson 135 Misc. 726, affd. 229 App. Div. 765). Certainly that rule applies where the gift is limited to the usufruct of the property (Matter of Von Kleist, 265 N. Y. 422). It was so limited here, because it was established as the law of the case in the 1954 decision that the surviving spouse received only ‘ ‘ a gift of *764 income for life ” (Matter of Missett, supra). In recent years the right to require a bond has been made statutory, with discretion vested in the Surrogate (Surrogate’s Ct. Act, § 169-a). The need for security is especially plain where the executor and the life tenant are the same person, so that the transfer of possession involves self-dealing. If the petitioner had desired for the sake of economy to avoid a bond he could have retained the property as executor (Matter of Wind, 1 Misc 2d 260; Matter of Clyne, 205 N. Y. S. 2d 675). The will relieved the petitioner of any obligation to furnish a bond as executor, but the law is clear that the exoneration did not extend to his adverse capacity as owner of the life estate (Matter of Wind, supra). Here he has made the transfer, provided no security and furnished no accounting. For aught that appears in the papers now submitted the $48,598.27, which is payable ultimately to the children, may have been dissipated. This objection is therefore sustained. The executor will be surcharged in the sum of $48,598.27 unless within a time to be fixed by the decree the petitioner either furnishes a bond in that amount conditioned as provided in section 169-a of the Surrogate’s Court Act, or unless a deposit be made with the trustee or otherwise as specified in section 106.
Next in importance is the special guardian’s objection to the alleged income distributions of $60,819.77. It is apparent that the decedent’s husband was entitled to some portion of the income as life tenant. The special guardian has computed that share at $28,679.40, from which it would follow that $32,140.37 should have been paid over to the trustee as earnings of the residuary trust. It is not clear to the court whether the executor disputes these figures; but whatever the correct amount may be the executor was without authority to ignore the trustee and disburse these funds himself. Under Article VII of the will the trustee was vested with discretion to determine the amount necessary for the support of the children. It may be that in the end the result is substantially the same as if the income which properly belonged to the trust had been remitted to the trustee, and then paid out by the latter for the children’s benefit. But the court has no means of knowing whether such is the fact or not. In any event the executor’s disregard of the provisions of the will cannot be sanctioned. In the absence of any other allocation of the income between the life tenant and the trustee, the court accepts the computation of the special guardian and holds that the executor has disbursed $32,140.37 of income without authority. The executor will be surcharged in that amount, which should have been paid to the trustee, but with leave to file *765 a claim with the trustee and to offset such claim against the surcharge if the executor can prove it to the trustee’s satisfaction or to the satisfaction of the court.
It is clear that through the executor’s mismanagement the rights of the children have been placed in grave jeopardy. The court understands the difficult situation in which the father found himself upon his wife’s death. She died in childbirth, leaving her husband with a new-born infant and a two-year-old child. But the gross mishandling of this substantial estate, the ultimate beneficiaries of which are the two infants, cannot be condoned. There was no accounting for more than eight years, and then only upon the insistence of the trustee. The trustee was surprisingly indulgent in waiting as long as it did — nearly seven years — before moving to compel an accounting. The court’s order for the filing of the account by March 3, 1959 was ignored for many months. During all these years the executor appears to have handled the estate assets (except for the amounts paid for administration expenses and taxes, and to the trustee) as though they were his own. It seems not improbable that a portion of the principal of the life estate has disappeared. The trustee never received its full share of principal, and its share of the income has been withheld and is not properly accounted for. Even today, although most of the assets may be in the hands of the bank as custodian, it appears that the income is being remitted to the life tenant. The court would be remiss in its duty to the children if this condition were permitted any longer to continue.
The letters testamentary heretofore issued to the petitioner are revoked, and the petitioner is directed to file an amended and supplementary account bringing his accounts down to date. It would appear that the orderly administration of the estate can best be accomplished by the appointment of the trustee as administrator c. t. a. If no application for such appointment is made within 20 days from the date of this decision, the court will direct the Public Administrator to institute the necessary proceeding. The administrator c. t. a., when appointed, may apply at the foot of the decree for such further directions as may be necessary to preserve and restore the rights of the infants, and the court will retain jurisdiction of the proceeding for that purpose.
It appears also that the petitioner still retains in his possession 240 shares of stock of the Southern New England Telephone Co. He is directed to deliver such shares to the Union and New Haven Trust Company, as custodian, and if he fails to do so he will be surcharged additionally for the value of such *766 stock on the date of its transfer to himself (Matter of Coffin, 143 N. Y. S. 2d 179). The bank in its capacity as custodian is directed to discontinue payments of income from the custodian account to the petitioner, pending the final determination of his liabilities.
The petitioner is denied commissions. Attorneys’ fees are fixed and allowed in the amount requested for all services rendered and to be rendered to and including the decree. The court is indebted to the special guardian for his careful and conscientious performance of duty under difficult circumstances.