ESTATE OF A. LINDSAY O'CONNOR, DECEASED, DERMOD IVES AND
UNITED STATES TRUST COMPANY OF NEW YORK, EXECUTORS,
TRUST UNDER ARTICLE FOURTH, SUBDIVISION I, OF THE WILL OF
A. LINDSAY O'CONNOR, DECEASED (MARITAL TRUST), DERMOD
IVES AND UNITED STATES TRUST COMPANY OF NEW YORK,
TRUSTEES, AND OLIVE B. PRICE, ROBERT L. AND LUCILLE S.
BISHOP, AND DONALD F. AND EDNA G. BISHOP, INDIVIDUALLY,
PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

Docket No. 7156–74.    Filed November 3, 1977.

*Kenneth W. Greenawalt* and *John F. Williamson,* for the
petitioners Estate of A. Lindsay O'Connor, deceased, Dermod
Ives and United States Trust Co. of New York, executors, and
Trust under Article Fourth, subdivision I, of the will of A.
Lindsay O'Connor, deceased (marital trust), Dermod Ives and
United States Trust Co. of New York, trustees.

*Morris Gitlitz* and *Eugene E. Peckham,* for the petitioners Olive B. Price, Robert L. and Lucille S. Bishop, and Donald F. and Edna G. Bishop.

*Rudolph J. Korbel* and *David A. Schmudde,* for the respondent.

OPINION

TANNENWALD, *Judge:* Respondent determined the following deficiencies in the petitioners' Federal income taxes:

|  | *TYE Oct. 31—* | *Deficiency* |
|---|---|---|
| Estate of A. Lindsay |  |  |
| O'Connor | 1969 | $275,443.00 |
|  | 1970 | 255,603.90 |
|  | 1971 | 174,335.76 |

|  | *TYE Dec. 31—* | *Deficiency* |
|---|---|---|
| Marital trust under will of |  |  |
| of A. Lindsay O'Connor | 1969 | $276,752.00 |
|  | 1970 | 294,027.90 |
|  | 1971 | 157,938.76 |
| Olive Price | 1970 | 70,460.50 |
|  | 1971 | 62,283.11 |
| Robert L. and |  |  |
| Lucille S. Bishop | 1970 | 74,122.65 |
|  | 1971 | 41,496.34 |
| Donald F. and Edna G. Bishop | 1970 | 76,580.90 |
|  | 1971 | 41,565.09 |

The issues before us are:

(1) Whether the decedent's estate properly claimed distributions deductions in respect of amounts received by a charitable foundation on the grounds either (a) that such amounts constituted distributions to a marital trust created under decedent's last will and testament or (b) that, since the foundation succeeded to the interests in the marital trust, such amounts should be treated as distributions to a beneficiary under said last will and testament;

(2) If the estate is entitled to such distributions deductions on the ground that they were made to the marital trust, whether

the marital trust is entitled to distributions deductions in respect of the amounts received by such charitable foundation;

(3) Whether certain distributions by the estate to the beneficiaries of residuary trusts under the decedent's last will and testament were required distributions of current income and, in any event, the amount of such distributions includable in gross income by such beneficiaries; and

(4) Whether a portion of the executors' commissions paid by the decedent's estate are allocable to tax-exempt income and, therefore, nondeductible.

Respondent concedes that any assessment against the marital trust for the taxable year ended December 31, 1969, is barred by the statute of limitations.

This case was submitted to the Court upon a full stipulation of facts, which, together with the exhibits, is incorporated herein by this reference.

A. Lindsay O'Connor (decedent) died on May 9, 1968, a resident of Delaware County, N. Y. His last will and testament, dated December 11, 1957, was admitted to probate by decree of the Surrogate's Court, County of Delaware, N. Y., dated May 20, 1968, and letters testamentary and letters of trusteeship were issued to Dermod Ives and United States Trust Co. of New York authorizing them to act as executors and trustees under the will. A joint petition was filed herein by Dermod Ives and United States Trust Co. of New York as executors and trustees and by Olive B. Price, Robert L. and Lucille S. Bishop, and Donald F. and Edna G. Bishop, individually. The United States Trust Co., a corporation organized under the banking laws of the State of New York, maintained its principal office in New York, N. Y., at the time of filing said petition.[1]

The executors filed an estate tax return on June 24, 1969. They elected a fiscal year ending October 31 for income tax reporting purposes. A short-period income tax return was filed by the estate for the period from the date of decedent's death to October 31, 1968. Thereafter, income tax returns for the estate were duly filed for the taxable years ending October 31, 1969, October 31, 1970, and October 31, 1971. The trustees elected the calendar year for income tax purposes and duly filed forms 1041

---

[1]The record does not disclose the residences of Dermod Ives, Olive B. Price, Robert L. and Lucille S. Bishop, and Donald F. and Edna G. Bishop at the time of the filing of the petition, although it creates the inference that all were then domiciled and residing in the State of New York.

for the marital trust and for each of the other trusts for 1969, 1970, and 1971.

The dispositive provisions of the decedent's will basically provided for the division of his estate into two shares.[2] The first share, consisting of one-half of the entire net estate, was bequeathed in trust (marital trust) for his widow, Olive B. O'Connor, who was given the income therefrom, coupled with a general testamentary power of appointment over corpus in favor of "such persons and/or corporations as she may appoint" and a power to withdraw at any time (including the year of death) any or all of the corpus by a written election to be filed with the trustees. As to the second share, the decedent made some specific pecuniary bequests and directed that the balance be divided into three equal parts, to be held in trust, with income from each part to be paid or applied for the benefit of Olive B. Price, Donald F. Bishop, and Robert L. Bishop (niece and nephews of the widow), respectively.

On May 23, 1968, the decedent's widow, Olive B. O'Connor (Mrs. O'Connor), notified the executors and trustees in writing that she elected to have all of the principal of the marital trust paid to her. By instrument, executed the same day and entitled "Gift Assignment of Interest in Estate of A. Lindsay O'Connor," Mrs. O'Connor assigned all of her right, title, and interest to the marital trust, together with any income from such property, to the A. Lindsay and Olive B. O'Connor Foundation (hereinafter the foundation). The foundation had been created by Mrs. O'Connor in 1965 and was, at all times material herein, recognized by the Internal Revenue Service as a charitable foundation within the meaning of section 501(c)(3).[3] For the year 1968, Mrs. O'Connor filed a gift tax return in which she reported the assignment of her interest in the marital trust to the foundation; the value of such interest in both income and corpus was estimated to be $25 million.

With respect to its 3 taxable years involved herein, the parties have stipulated that "the estate made the following distributions to the beneficiaries thereof":

---

[2]After the disposition of decedent's real property and tangible personal property.

[3]Unless otherwise stated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years at issue.

*For fiscal year ended Oct. 31, 1969*

To the marital trust:
Income cash ...............................................$500,000.00
Principal cash .......................................................0
Securities from principal account
  having a market value of ............................ 499,625.00
  Total ................................................... 999,625.00

*For fiscal year ended Oct. 31, 1970*

To the marital trust:
Securities from principal account
  having a market value of ......................... $18,222,981.00
Principal cash ............................................... 6,238.22
Income cash ............................................... 210,533.41
  Total ............................................... 18,439,752.63

To the residuary trusts under the will
  for the benefit of Olive B. Price, Robert L.
  Bishop, and Donald F. Bishop, respectively:
  $2,000 each in cash from principal account

To Olive B. Price:
Income cash in the amount of ......................... 181,708.17

To Robert L. Bishop:
Income cash in the amount of ......................... 181,708.18

To Donald F. Bishop:
Income cash in the amount of ......................... 181,708.18

*For fiscal year ended Oct. 31, 1971*

To marital trust:
Securities from principal account
  having a market value of ......................... $1,013,661.00
Income cash in the amount of ......................... 252,957.69
  Total ................................................ 1,266,618.69

To Olive B. Price:
Income cash in the amount of ...........................84,319.22

To Robert L. Bishop:
Income cash in the amount of ...........................84,319.22

To Donald F. Bishop:
Income cash in the amount of ...........................84,319.23

The total value of such distributions in each case exceeded the distributable net income of the estate as reflected in its income tax returns for each of its taxable years in issue. The parties further stipulated that the marital trust distributed all that it received from the estate to the foundation shortly after receipt.[4]

The parties have further stipulated that the administration of the estate continues pending the outcome of this proceeding; that the trustees continue to administer the marital trust, receiving estate assets from time to time, and in general turning over the assets received to the foundation shortly after receipt by the trust; that a small balance of principal cash is now maintained by the trust; and that, when the controversies involved in this proceeding are finally determined and the trustees have received from the executors all property passing under the will to the marital trust (which must be distributed to the trustees, despite Mrs. O'Connor's assignment, under New York law), they will make a final judicial accounting to the Surrogate's Court and only after that accounting proceeding is completed and all assets remaining in their possession thereafter have been distributed can the administration of the trust be considered completed.

For its taxable years at issue, the estate claimed distributions

_____

[4] The executors and trustees prepared intermediate accounts of their respective activities as such executors and trustees for the period beginning with the date of decedent's death and ending on May 8, 1970; on June 11, 1970, they petitioned the Surrogate's Court of Delaware County for a judicial settlement of such accounts. By decree dated Nov. 23, 1970, the accounts were so settled. The accounting was for the estate and marital trust, but not for the residuary trusts. Pending settlement of the accounts, securities distributed to the foundation were held in escrow. After the accounting decree was signed, all of the escrowed securities were turned over to the foundation.

deductions under section 661(a)(2)[5] against its reported distributable net income as follows:

| | Fiscal Year Ended Oct. 31— | | |
|---|---|---|---|
| | 1969 | 1970 | 1971 |
| Distributable net income (DNI) | $997,410.96 | $512,425.56 | $290,605.13 |
| Tax-exempt interest | 618,364.21 | 129,384.67 | 0 |
| DNI less tax-exempt interest | 379,046.75 | 383,040.89 | 290,605.13 |
| Distributions to marital trust | 999,625.00 | 18,439,752.63 | 1,266,618.69 |
| Distributions to Olive B. Price Trust | 0 | 2,000.00 | 0 |
| Distributions to Robert L. Bishop Trust | 0 | 2,000.00 | 0 |
| Distributions to Donald F. Bishop Trust | 0 | 2,000.00 | 0 |
| Distributions to Olive B. Price | 0 | 181,708.17 | 84,319.22 |
| Distributions to Robert L. Bishop | 0 | 181,708.18 | 84,319.22 |
| Distributions to Donald F. Bishop | 0 | 181,708.18 | 84,319.23 |
| Total distributions | 999,625.00 | 18,990,877.16 | 1,519,576.36 |
| Claimed distributions deduction | 379,046.75 | 383,040.89 | 290,605.13 |
| Reported taxable income | 0 | 0 | 0 |

For its taxable years in question, returns were filed for the marital trust on which the amounts distributed from the estate and passed through[6] to the foundation in accordance with the election and assignment executed by Mrs. O'Connor were reported and deducted under section 661(a).

As noted in the above table, the estate also made income distributions directly to the beneficiaries of the residuary trusts prior to the transfer of the underlying assets to such trusts. On the premise that such distributions were not required to be made currently by the estate, each of the individual beneficiaries computed his respective tax liability in accordance with section 662(a)(2).[7]

---

[5]SEC. 661. DEDUCTION FOR ESTATES AND TRUSTS ACCUMULATING INCOME OR DISTRIBUTING CORPUS.

(a) DEDUCTION.—In any taxable year there shall be allowed as a deduction in computing the taxable income of an estate or trust (other than a trust to which subpart B applies), the sum of—

(1) any amount of income for such taxable year required to be distributed currently (including any amount required to be distributed which may be paid out of income or corpus to the extent such amount is paid out of income for such taxable year); and

(2) any other amounts properly paid or credited or required to be distributed for such taxable year;

but such deduction shall not exceed the distributable net income of the estate or trust.

[6]Plus relatively small amounts of income earned on the funds distributed from the estate before disposition to the foundation.

[7]SEC. 662. INCLUSION OF AMOUNTS IN GROSS INCOME OF BENEFICIARIES OF ESTATES AND TRUSTS ACCUMULATING INCOME OR DISTRIBUTING CORPUS.

(a) INCLUSION.—Subject to subsection (b), there shall be included in the gross income of a beneficiary to whom an amount specified in section 661(a) is paid, credited, or required to be distributed (by an estate or trust described in section 661), the sum of the following amounts:

(1) AMOUNTS REQUIRED TO BE DISTRIBUTED CURRENTLY. * * *

(2) OTHER AMOUNTS DISTRIBUTED.—All other amounts properly paid, credited, or required to be distributed to such beneficiary for the taxable year. If the sum of—

(A) the amount of income for the taxable year required to be distributed currently to all beneficiaries, and

On its income tax return for the taxable year ending October 31, 1971, the estate claimed a deduction for the payment of executors' commissions in the amount of $55,674.04. The commissions were computed on the basis of the estate's aggregate gross income earned from the date of death to May 8, 1970 (the intermediate accounting period), or $1,391,851.25. Of this amount, $703,759.65 was tax-exempt income. No tax-exempt income was earned in the taxable year ending October 31, 1971.

Respondent made three primary determinations in respect of the above-outlined distribution plan:

(1) The marital trust was not a recognizable tax entity because it was a passive trust under New York law;

(2) Section 661(a) does not permit a deduction to an estate or trust for distributions to charitable entities where such distributions do not qualify for deduction under section 642(c); and

(3) The income paid to the residuary trust beneficiaries was required to be distributed currently by the residuary trusts.

The frame of reference for issues posed by respondent's determinations can be simply stated: Who is taxable, and to what extent, on income earned and distributed by the decedent's estate during its period of administration? Resolution of the issues is not as simply divined.

The core questions with respect to the amounts received by the foundation are (a) to what extent should the marital trust be recognized for the purposes of this proceeding; (b) should section 1.663(a)–2, Income Tax Regs.,[8] be given effect; and (c) if the regulation is not given effect, should the foundation be treated as a "beneficiary" for the purposes of the distributions deduction?

---

(B) all other amounts properly paid, credited, or required to be distributed to all beneficiaries exceeds the distributable net income of the estate or trust, then, in lieu of the amount provided in the preceding sentence, there shall be included in the gross income of the beneficiary an amount which bears the same ratio to distributable net income (reduced by the amounts specified in (A)) as the other amounts properly paid, credited or required to be distributed to the beneficiary bear to the other amounts properly paid, credited, or required to be distributed to all beneficiaries.

[8]That section of the regulations provides in pertinent part as follows:

"Any amount paid, permanently set aside, or to be used for the charitable, etc., purposes specified in section 642(c) and which is allowable as a deduction under that section is not allowed as a deduction to an estate or trust under section 661 or treated as an amount distributed for purposes of determining the amounts includible in gross income of beneficiaries under section 662. *Amounts paid, permanently set aside, or to be used for charitable, etc., purposes are deductible by estates or trusts only as provided in section 642(c)*. [Emphasis added.]"

Before turning to these questions, we deem it appropriate to deal with an addendum to one of petitioners' briefs in which an attempt is made to support the proposition that the distributions to the foundation qualify for the charitable deduction provided for in section 642(c). One of the critical requirements of that section is that the amount in question be paid "pursuant to the terms of the governing instrument." Petitioners seek to bring the payments to the foundation within section 642(c) by latching on to the provision in the decedent's will granting Mrs. O'Connor a general power of appointment "to such persons and/or corporations" as she sees fit. Aside from the fact that Mrs. O'Connor in form never exercised her power of appointment in favor of anyone, the mere reference to "corporations," even if coupled with decedent's knowledge of the existence of the foundation, simply does not meet the test of section 642(c), namely, that the governing instrument (in this case, decedent's will) must contain some manifestation of charitable intent. See *Ernest & Mary Hayward Weir Found. v. United States*, 362 F.Supp. 928, 939 (S.D.N.Y. 1973), affd. per curiam 508 F.2d 894 (2d Cir. 1974). Cf. *Estate of Pickard v. Commissioner*, 60 T.C. 618, 622 (1973), affd. without opinion 503 F.2d 1404 (6th Cir. 1974). Accordingly, we now turn to the core questions.

We first direct our attention to the estate's claimed distributions deductions for amounts passed through the marital trust to the foundation. This issue involves an initial determination of whether the marital trust should be recognized for purposes of this proceeding.[9]

Although respondent has, by virtue of various parts of the stipulation of facts, conceded that the marital trust existed in the sense that distributions from the estate were required, by virtue of New York law, to be made to and through the trustees, he nevertheless contends that the trust was passive under section 7–1.2, New York Estates, Powers & Trusts Law, and is not recognizable for tax purposes.

We find it unnecessary to resolve the status of the marital trust for State law purposes. Even assuming arguendo that throughout the years in question a valid trust[10] existed for

---

[9]There is no doubt that if the marital trust is a viable tax entity, the estate is entitled to a sec. 661(a) deduction in respect of its distributions thereto and the issue then becomes whether the trust is entitled to a distributions deduction for amounts paid to the foundation.

[10]We have no doubt that a valid trust existed from the time of decedent's death until Mrs.

purposes of State law, it does not follow that it was a recognizable tax entity. Indeed, we think that by virtue of the operation of section 678 it was not.[11]

When a grantor or other person has certain powers in respect of trust property that are tantamount to dominion and control over such property, the Code "looks through" the trust form and deems such grantor or other person to be the owner of the trust property and attributes the trust income to such person. See secs. 671, et seq. By attributing such income directly to a grantor or other person, the Code, in effect, disregards the trust entity.[12] Income is deemed, therefore, to have been received by the "owner" of the property.

The circumstances in which a person other than a grantor is considered the owner of trust property are set forth in section 678, which provides in part as follows:

SEC. 678. PERSON OTHER THAN GRANTOR TREATED AS SUBSTANTIAL OWNER.

(a) GENERAL RULE.—A person other than the grantor shall be treated as the owner of any portion of a trust with respect to which:

(1) such person has a power exercisable solely by himself to vest the corpus or the income therefrom in himself, or

(2) such person has previously partially released or otherwise modified such a power and after the release or modification retains such control as would, within the principles of sections 671 to 677, inclusive, subject a grantor of a trust to treatment as the owner thereof.

There can be no doubt that, prior to her election to withdraw corpus and her assignment thereof, Mrs. O'Connor's powers over the trust property were sufficiently extensive to cause her to be the owner thereof under section 678 for Federal income tax purposes.[13] By her withdrawal of corpus and her assignment, Mrs. O'Connor relinquished all powers in respect of the trust

O'Connor's election to withdraw corpus and her assignment to the foundation. However, the only duty of the trustees thereafter was to transfer property received from the estate to the foundation. Whether this singular duty suffices to constitute an active trust is not free from doubt under New York law. See I. Glasser, "Trust, Perpetuities, Accumulations and Powers under the Estates, Powers, and Trusts Law," 33 Brooklyn L. Rev. 551, 555–556 (1967).

[11]We do not believe the stipulation to which respondent agreed (see p. 170 *supra* ) precludes us from considering the legal issue of the application of sec. 678. See also n. 19 *infra*.

[12]The trust is not required to report income attributed to another on its Form 1041, but should show such income on a separate statement attached thereto. Sec. 1.671–4, Income Tax Regs. To the extent that a trust does not have any taxable income and does not have gross income in excess of $600, however, it need not file a Form 1041. Sec. 6012(a)(4).

[13]Indeed, petitioners acknowledge the applicability of sec. 678 to Mrs. O'Connor albeit in another context. Petitioners opine that Mrs. O'Connor was a "beneficiary" of the estate; that, by operation of that section, she was the "owner"; and that, upon her assignment, the foundation stepped into her

property and was no longer the owner thereof within the meaning of section 678.

By that assignment, however, the foundation had an immediate right to all income and corpus as it filtered into the marital trust.[14] Indeed, the nature of the foundation's rights in respect of the trust property was so extensive so as to necessarily include the somewhat lesser rights spelled out in section 678(a)(1). Thus, it is clear that, within the meaning of that section, the foundation was the "owner" of all of the trust property (both income and corpus)[15] passing from the estate to the marital trust. We recognize that the only function of section 678 is to tax income to the person having the power to vest either trust corpus or trust income in himself, but the means Congress has employed to do this (attribution of ownership) routes income from its source directly to the "owner" as though no trust exists.[16] We think it anomalous to view the estate as making distributions to the marital trust for tax purposes when the statute requires us to view the foundation as receiving distributions from the estate.[17]

As further support for the position that the marital trust was

shoes and became a "beneficiary" of the estate, thus entitling the estate to a sec. 642(c) deduction for distributions thereto. See p. 174 *supra*.

[14]At the time of the assignment, the marital trust was not funded. From the moment the estate passed any assets to the marital trust (the entity that the parties stipulated to be the proper estate distributee under State law), the foundation had an immediate right to the same.

[15]Sec. 678 can apply to either all or part of trust property depending upon the extent of the "owner's" rights over such property. See sec. 671.

[16]See generally H. Rept. 1337, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. A211–218 (1954). The legislative history clearly indicates an intent to disregard the trust form when ownership is attributed to a grantor or other person in that, along with ownership, all items of tax significance (income, deductions, and credits) are likewise attributed to such persons. E.g., when ownership of trust property is attributed under secs. 671, et seq., income is included in the income of the "owner" and he is allowed deductions for expenses "which he would have been entitled to *if the trust had not been created.*" H. Rept. 1337, *supra* at A212 (emphasis added). See also sec. 1.671–3, Income Tax Regs.

[17]If sec. 678 were construed otherwise so that a trust existed, at least insofar as the estate was concerned, the estate would get a sec. 661 deduction for amounts passed to such trust and a share of its distributable net income would be allocated to the trust. But, as between the trust and the foundation, sec. 678 would come into play to attribute all trust income to the foundation. Because of the operation of sec. 678 at this level only, the issue of whether or not the trust may claim a sec. 661 deduction for its distributions to the foundation is mooted because the trust would have no income to offset with a sec. 661 deduction.

We think it incongruous to say that, on the one hand, the trust could be allocated income from the estate and, on the other hand, the trust could not have any income.

We also note that, in the context of this case, we are dealing solely with the impact of sec. 678 insofar as other provisions of subch. J are concerned. We do not in any way imply that a similar analysis would necessarily obtain in situations where there is an interplay between sec. 678 and provisions of the Code outside of subch. J, such as are involved, for example, in the cases discussed in Judge Fay's dissenting opinion.

not a recognizable entity for tax purposes, we would add that it does not fall within the definition of trusts which clearly contemplates more activity on the part of a trust than the simple conduit role assumed herein. Section 301.7701–4(a), Proced. & Admin. Regs., provides:

> In general, the term "trust" as used in the Internal Revenue Code refers to an arrangement created either by a will or by an inter vivos declaration whereby trustees take title to property *for the purpose of protecting or conserving it for the beneficiaries* under the ordinary rules applied in chancery or probate courts. * * * [Emphasis added.]

Even assuming the trustees took legal title under State law, it is clear that their activity in respect of the marital trust property failed to rise to the level of protection or conservation.[18]

In sum, we think that, because of the operation of section 678, the marital trust was not a recognizable tax entity and the foundation should be treated as the owner of the trust property.[19] Accordingly, the estate must be deemed to have made its distributions directly to the charitable foundation.

Having decided that the marital trust should not be recognized for tax purposes, we are still left with the question whether the amounts received by the foundation constitute distributions deductible by the estate.

We turn first to the principal question on which the parties have locked horns, namely, the effect which should be given to the following provision of section 1.663(a)–2 of respondent's regulations (see also n. 8 *supra* ).

> Amounts paid, permanently set aside, or to be used for charitable, etc., purposes are deductible by estates or trusts only as provided in section 642(c).

Respondent argues that, since the distributions to the foundation do not qualify under section 642(c), the above-quoted regulation precludes their deductibility under section 661(a)(2) (see n. 5 *supra*).

Petitioners contend that respondent's regulation is without statutory support and is invalid. Their reasoning is that: (a)

---

[18]Even accepting respondent's stipulation as to the continued administration of the marital trust under State law, it might also be argued that the level of trust activity was so low that the trust lacked economic substance for tax purposes. See and compare *Furman v. Commissioner*, 45 T.C. 360, 364 (1966), affd. per curiam 381 F.2d 22 (5th Cir. 1967).

[19]The fact that respondent has not argued the applicability of sec. 678 does not preclude our reaching a conclusion in his favor on the basis of the purely legal issue involved. See *Smith v. Commissioner*, 56 T.C. 263, 291 and n.17 (1971), and cases cited therein.

Section 661(a)(2) permits an estate a deduction for "any other amounts properly paid or credited or required to be distributed for such taxable year," subject, however, to the exclusions enumerated in section 663(a); (b) the latter section simply precludes a distributions deduction for charitable distributions that *qualify* for the section 642(c) deduction; and (c) because the statute does not exclude nonqualifying charitable dispositions from section 661, the distributions to the foundation must be deductible thereunder.

The validity of respondent's regulation has been considered and sustained by the Court of Claims. In *Mott v. United States*, 462 F.2d 512 (Ct. Cl. 1972), the testator left two-thirds of his residuary estate to charity and one-third of such residuary estate plus *all* income earned during administration to an individual; the estate claimed a section 661 distributions deduction for corpus distributed to the charitable beneficiary. Because the charitable bequest did not include any income, no deduction was available under section 642(c). The issue was whether the charitable disposition was otherwise deductible under section 661 since none of the express statutory exclusions was applicable.[20] The Government relied upon section 1.663(a)–2 of the regulations to challenge the claimed deduction.

The Court of Claims upheld the Government's position on the ground that, although there was no express statutory provision to support it, the regulation was valid, citing *Commissioner v. South Texas Lumber Co.*, 333 U.S. 496, 501 (1948), in which the Supreme Court stated that respondent's regulations must be sustained unless "unreasonable and plainly inconsistent with the revenue statutes." See 462 F.2d at 517. Carefully examining the purpose and operation of subchapter J, the Court of Claims found that, under the facts before it, the regulation was "in accord with what we believe to be an implied Congressional intent to prevent all charitable distributions, whether or not deductible under Section 642(c), from entering into the operation of the distribution rules."

While we recognize that *Mott* is distinguishable from the situation existing herein in that we are concerned with distributions of income (as well as corpus) while, in that case,

---

[20]The bequest was neither a specific bequest under sec. 663(a)(1) nor a qualified charitable distribution for purposes of sec. 663(a)(2). See *Mott v. United States*, 462 F.2d 512, 516 (Ct. Cl. 1972).

only a distribution of corpus was involved, we consider such factual distinction insufficient to justify not applying the test of *Commissioner v. South Texas Lumber Co., supra.*[21] In so stating, we find it unnecessary to go as far as the Court of Claims did and hold that any rule, other than that embodied in respondent's regulation, would be unreasonable. Nor can we refuse to sustain the validity of respondent's regulation simply because, had we been charged with responsibility for writing the regulation, we might have constructed a different provision.[22] We go no further than to conclude that a literal interpretation of section 661(a)(2), which would permit (subject to the distributable net income ceiling) the deductibility of all amounts distributed and not otherwise expressly disallowed (see *Mott v. United States, supra* at 517) would be inconsistent with the statutory framework and overall legislative objectives of subchapter J and that, as applied to the circumstances herein, respondent's regulations should be sustained.[23] Admittedly there are two provisions (secs. 661(a) and 642(c)) which can be said to bear on the instant case. But one (sec. 642(c)) is specific and the other (sec. 661(a)) is general. The situation, if not precisely within the ejusdem generis rule, at least falls within the principles embodied in that rule. Cf., e.g., *State Mutual Life Assur. Co. v. Commissioner,* 246 F.2d 319 (1st Cir. 1957), affg. 27 T.C. 543 (1956); *Essenfeld v. Commissioner,* 37 T.C. 117 (1961), affd. 311 F.2d 208 (2d Cir. 1962). Cf. also *United States v. Knapp Bros. Shoe Manufacturing Corp.,* 384 F.2d 692 (1st Cir. 1967); *Crosby Valve & Gage Co. v. Commissioner,* 380 F.2d 146 (1st Cir. 1967), affg. 46 T.C. 641 (1966).

*Casco Bank & Trust Co. v. United States,* 406 F. Supp. 247 (D. Me. 1975), and *Bank of America Nat. Trust & Sav. Assn. v. United States,* 203 F. Supp. 152 (N.D. Cal. 1962), affd. on this issue 326 F.2d 51 (9th Cir. 1963), relied on by petitioners, which involved the status of amounts concededly constituting distribu-

---

[21] Even though the distributions herein included income, the consequence of invalidating respondent's regulation invites the same abuse as where no income is in fact distributed to charity. In such a case, applying sec. 661 would allocate to the charity and therefore make nontaxable an amount of income bearing no relationship to the amount of income actually distributed to the charity.

[22] The opinion in *Mott v. United States, supra,* has been criticized. See M. Ferguson, J. Freeland, & R. Stephens, Federal Income Taxation of Estates and Beneficiaries 88 (1976 Supp.). See also, A. Michaelson, Income Taxation of Estates and Trusts 57 and n. 70 (1974 rev.).

[23] Cf. *Jeffers v. United States,* 556 F.2d 986 (Ct. Cl. 1977).

Like the Court of Claims in *Mott* (see 462 F.2d at 518), we do not rule out the possibility that there may be a situation where the mechanical application of respondent's regulation would be unwarranted.

tions deductions to an estate, but "trapped" as principal in the hands of the recipient trustee, are inapposite to the case at bar. The same is true of *Harkness v. United States*, 469 F.2d 310 (Ct. Cl. 1972), which dealt with the allocation as between beneficiaries of income that clearly qualified as distributions deductions to the estate.

Having reached the conclusion that, by virtue of section 1.663(a)–2 of respondent's regulations, the estate herein should not be allowed distributions deductions for amounts distributed to the foundation, we find it unnecessary to deal with the question whether, in any event, the foundation qualifies as a "beneficiary" of decedent's estate so as to permit the deduction of distributions to it under section 661(a). See *Mott v. United States, supra* at 517–518; *United States v. James*, 333 F.2d 748, 750 (9th Cir. 1964); *duPont Testamentary Trust v. Commissioner*, 66 T.C. 761, 767 (1976). Cf. *Nemser v. Commissioner*, 66 T.C. 780 (1976), affd. 556 F.2d 558 (2d Cir. 1977); *Sletteland v. Commissioner*, 43 T.C. 602 (1965); compare *Cummings v. United States*, an unreported case (C.D. Cal. 1969, 23 AFTR 2d 69–1322, 69–1 USTC par. 9359); *Estate of McCoy v. Commissioner*, 50 T.C. 562 (1968).[24] Similarly, we find it unnecessary to deal with the question as to whether, assuming the foundation qualifies as a "beneficiary," deductions should be denied for amounts distributed to it because section 661(a) permits deductions only for distributions to *taxable* beneficiaries. See *Mott v. United States, supra* at 518.

Although we have determined that amounts distributed to the foundation are not deductible by the estate, we do not agree with respondent that such nondeductible distributions work an allocable reduction in the estate's claimed distributions deductions for years in which the estate made other distributions that do qualify for deduction.[25] The operation of subchapter J permits an estate to take deductions under section 661 for all qualifying

---

[24]The parties did not focus on the issue thus framed, although petitioners, in a passing reference, appear to assume that the foundation was a beneficiary, citing *Blair v. Commissioner*, 300 U.S. 5 (1937), as authority. We note that that case involved a completely different issue, namely, whether the assignor of an income interest in a trust continued to be liable for the tax upon the income or whether the assignees were so liable. The statements by the Supreme Court were made in the context of resolving that issue and are arguably inapposite to the issue of the definition of a beneficiary for the purposes of subch. J.

[25]For its 1969 fiscal year, the estate's only distributions were to the foundation, and no question of allocation is involved.

distributions up to but not exceeding the amount of its distributable net income. For its 1970 fiscal year, the estate made otherwise qualifying distributions in excess of its distributable net income and respondent does not contend to the contrary. Consequently, the amount of its distributions deduction for that year remains unaffected. The same considerations apply to the estate's 1971 fiscal year. However, in that year, the estate made qualifying distributions in an amount less than its distributable net income and it is entitled to deduct only the amount of such distributions.[26]

The next question posed herein is the amount includable in the income of each of the residuary trust income beneficiaries from the estate distributions to them in 1970 and 1971. Respondent does not contend that the income beneficiaries of the residuary trust were first-tier beneficiaries *of the estate*, i.e., that *the estate* was required to distribute income currently to them, and that, therefore, the income beneficiaries were required to include the distributions to them in gross income in accordance with section 662(a)(1). Rather, he argues that, although the estate was not required to distribute income currently to such beneficiaries,[27] such distributions were made by the executors in their capacity as trustees, that the residuary trusts required that income be currently distributed under section 652, and that, therefore, the same result should obtain. The arguments of the parties in respect of this question are intertwined with the proper treatment to be accorded the payments by the estate to the foundation; the result is that the focus of their arguments is distorted and they are not as helpful as they might otherwise be.

---

[26]The estate made the following qualifying distributions in those years:

|  | 1970 | 1971 |
|---|---|---|
| To residuary trusts | $6,000.00 | 0 |
| To residuary trust beneficiaries | 545,124.53 | $252,957.67 |
| Total distributions | 551,124.53 | 252,957.67 |

The estate's distributable net income was $512,425.36 for its 1970 fiscal year (including tax-exempt interest) and $318,755.51 for its 1971 fiscal year (including an upward adjustment for disallowed commissions, see p. 183 *infra*).

[27]No such requirement appears in the decedent's will . Under New York law, the right to receive the income earned during estate administration arises at the date of decedent's death, in the absence of contrary testamentary provisions. See sec. 11–2.1(d), N. Y. Est., Powers & Trusts Law (McKinney 1967). However, that does not mean that such income is required to be currently distributed. We have previously held that the statutory predecessor of sec. 11–2.1(d) (sec. 17–b, N. Y. Pers. Prop. Law) did not require current distribution. *Estate of Igoe v. Commissioner*, 6 T.C. 639, 645–646 (1946). The current law does not hint of any change requiring current distribution. See G. Barclay, "The I rincipal and Income Act," 33 Brooklyn L. Rev. 489, 491 (1967). Cf. *Hill v. Commissioner*, 24 T.C. 1133, 1137 (1955).

Taxation of estate beneficiaries is prescribed in section 662(a) and, because that section complements section 661(a), the tax liabilities for amounts distributed by the estate are allocated among the beneficiaries of section 661(a) distributions. Because the parties are in agreement that the *estate* was not required to make any current distributions of income, it is clear that all of the recipients of the estate's section 661(a) distributions were second-tier beneficiaries under section 662(a)(2); they must include in income that portion of their respective distributions which constitutes their allocable share of the estate's distributable net income. An allocable share under section 662(a) is the fraction of the estate's aggregate section 661(a) distributions received by the respective beneficiary.

For 1970, the estate made distributions of $2,000 to each of the three residuary trusts and of $181,708 to each income beneficiary of the residuary trusts, distributions which, in the aggregate, exceeded the estate's distributable net income. In apportioning such distributable net income among such distributees under section 662(a), we must choose between two possible modes of allocation.

One alternative would treat each of the residuary trusts[28] and the income beneficiaries thereof as beneficiaries of the estate. In such event, a portion of the estate's distributable net income would be allocable in respect of the $2,000 principal distribution to each trust for that year and a portion would be allocable to the amounts distributed to each of the income beneficiaries. Cf. *Harkness v. United States, supra; Casco Bank & Trust Co. v. United States, supra.* The other alternative would treat the amounts distributed to the trusts' income beneficiaries as having first been constructively distributed to the residuary trusts and by the trusts to such beneficiaries.[29] In such event, there would only be three beneficiaries of the estate, i.e., the trusts, among whom the estate's distributable net income would be allocated, and the amounts to be reported by the income beneficiaries would depend upon their respective trust's distributable net

[28]The residuary trusts are not parties to this proceeding.

[29]The necessity for making a choice for the 1970 fiscal year arises because the amounts distributed by the estate for purposes of secs. 661 and 662 were in excess of its distributable net income, a situation which does not exist with respect to the 1971 fiscal year because the amounts distributed by the estate did not exceed, in the aggregate, the amount of its distributable net income (see n.26 *supra*). Moreover, no distributions were made to the residuary trusts in 1971.

income. We find it unnecessary to choose between the two alternatives[30] because of the stipulation of the parties that the distributions set forth in our findings of fact (see pp. 168–170 *supra*) were made by the estate "to the *beneficiaries thereof*" (see p. 169 *supra* ). (Emphasis added.) We think this stipulation, agreed to by respondent, is of a different quality than the various stipulations regarding the marital trust (see p. 173 and n.11 *supra*) and that respondent should be held bound thereby. We do not think that the mere fact that the executors and trustees were one and the same is sufficient to overcome the effect of respondent's stipulation and to justify the adoption of a theory of constructive receipt and distribution by the residuary trusts of the amounts distributed directly to the income beneficiaries. As a consequence of the foregoing, we conclude that each of the residuary trusts and each of the income beneficiaries thereof should be treated as beneficiaries of the estate for purposes of determining the allocation of the estate's distributable net income, that any theory of constructive distributions to them as first-tier beneficiaries of the residuary trusts should be rejected, that the income beneficiaries should be treated as second-tier, and not first-tier, beneficiaries of the estate (see pp. 180–181 *supra*), and that the includability of the distributions in their income should be governed by section 662(a).[31]

For 1971, the estate's only distributions were to the residuary

---

[30]The choice is not without its troublesome aspects involving the extent to which sec. 11–2.1(c)(1) and (d)(2), N. Y. Est., Powers & Trusts Law, accords an income beneficiary of a testamentary trust independent status as a beneficiary of an estate or derivative status through the trust (see also n. 27 *supra*) and whether, if such independent status is accorded under New York law, the application of the concept of constructive receipt by the trust, for Federal income tax purposes, of amounts distributed by the estate directly to such income beneficiary is thereby precluded. Compare *Lamkin v. United States*, 533 F.2d 303 (5th Cir. 1976), and *In re Nissen's Estate*, 345 F.2d 230 (4th Cir. 1965). Some commentators have assumed that independent status can be conferred, for Federal income tax purposes, by local law. See H. Conway & N. Hale, 302 T.M., A–21, A–23 (BNA 1976); H. Levine, "Timing and Effect of Distributions by Executors and Trustees: Allocations Among Beneficiaries," 27th Ann. N.Y.U. Tax Inst. 287, 296–297 (1969); Fremont-Smith, "Techniques for Controlling Income Tax Consequences of Trusts and Estates and Their Beneficiaries," 25th Ann. N.Y.U. Tax Inst. 1019, 1036–1037 (1967). Compare *In re Missett's Will*, 218 N.Y.S.2d 393 (Westchester County Surr. Ct. 1961), where an executor wrongfully bypassed a trust in distributing income because the amount to be distributed was left to the trustee's discretion by the terms of the decedent's will.

[31]The consequence of these conclusions is that each income beneficiary will include in income (adjusted for tax-exempt interest, see sec. 662(b)) amounts calculated on the basis of the figures shown in n. 26 *supra*, and in accordance with the following formula:

$$\frac{\text{Amount of distributions received}}{\text{Total qualifying distributions}} \quad \times \quad \begin{array}{l}\text{Estate's}\\\text{distributable}\\\text{net income}\end{array}$$

trusts' income beneficiaries and such distributions did not, in the aggregate, exceed distributable net income. Under section 662(a)(2) each distributee must include in income the full amount received.

The final question presented herein is whether the estate improperly claimed a deduction on its income tax return for the year ending October 31, 1971, for executors' commissions paid in the amount of $55,674.04 in respect of estate income earned from the date of death to May 8, 1970 (the intermediate accounting period). Respondent determined that a portion of such commissions ($28,150.38) must be allocated to tax-exempt income earned during the accounting period and that the portion so allocated is nondeductible under section 265.

Petitioners, in their petition, claimed entitlement to the deduction in full for the reason that the estate had no tax-exempt income for the year in which the commissions were paid and claimed. However, petitioners have made no argument in respect of this issue on brief and we therefore consider it abandoned. As a consequence, the estate's distributable net income for its 1971 fiscal year should be increased by $28,150.38, i.e., from $290,605.13 to $318,755.51. See and compare *Whittemore v. United States*, 383 F.2d 824 (8th Cir. 1967). See also *Fabens v. Commissioner*, 519 F.2d 1310 (1st Cir. 1975), affg. in part 62 T.C. 775 (1974).

*Decision will be entered under Rule 155.*

Reviewed by the Court.

GOFFE, *J.*, did not participate in the consideration or disposition of this case.

SCOTT, *J.*, dissenting: I respectfully disagree with the conclusion of the majority that the provisions of section 678, I.R.C. 1954, result in the grantor or other person who has certain powers in respect of trust property being the owner of that "property" so that the "trust entity" is disregarded. To do this would effectively cause the trust entity of many marital trusts to be disregarded since in many marital trusts the beneficiary has the power to vest "the corpus or income therefrom" in herself. Secondly, the statutes (sec. 671, etc.) refer to including

in the income of the grantor, or other person to whom the income is taxed under subpart E, the "income * * * of the trust." The regulations follow this same pattern.

Section 1.671–1(a), Income Tax Regs., states in part:

(a) Subpart E (section 671 and following), part I, subchapter J, chapter 1 of the Code, contains provisions taxing *income of a trust* to the grantor or another person under certain circumtances * * * [Emphasis added.]

Section 1.671–2(a), Income Tax Regs., states in part:

(a) Under section 671 a grantor or another person includes in computing his taxable income and credits those items of *income*, deduction, and credit against tax which are *attributable to* or included in *any portion of a trust* of which he is treated as the owner. * * * [Emphasis added.]

Section 1.671–2(b), Income Tax Regs., states in part:

(b) Since the principle underlying subpart E (section 671 and following), part I, subchapter J, chapter 1 of the Code, is in general that *income of a trust* over which the grantor or another person has retained substantial dominion or control should be taxed to the grantor or other person rather than to *the trust which receives the income* * * * [Emphasis added.]

Section 1.671–4, Income Tax Regs., states as follows:

Sec. 1.671–4 Method of reporting.
Items of income, deduction, and credit attributable to any portion of a trust which, under the provisions of subpart E (section 671 and following), part I, subchapter J, chapter 1 of the Code, are treated as owned by the grantor or another person should not be reported by the trust on Form 1041, but should be shown on a separate statement to be attached to that form.

In my view, section 1.671–4, Income Tax Regs., requires the filing of a return by the trust to show on a statement attached to that return that the *"income of the trust"* is taxed to the grantor or another person. If section 678 is applicable here, I would conclude that, if the trust is not for other reasons to be ignored for tax purposes, it remains a viable trust with *its income* taxable to the grantor or another person.

WILBUR, *J.*, agrees with this dissenting opinion.

FAY, *J.*, dissenting: I respectfully dissent in the conclusions reached herein by the majority. Specifically, I believe the opinion to be faulty in its reasoning and holding regarding the tax status of so-called grantor trusts.

As its main contention for ignoring the trust created under

the will of A. Lindsay O'Connor, the majority makes the bold assertion that: "By attributing such income directly to a grantor or other person [via secs. 671, et seq.], the Code, in effect, disregards the trust entity." Devoid of any articulation of rationale for its holding, the logical result of the majority's opinion is that a grantor trust has no separate transactional existence under the Internal Revenue Code. I cannot agree.[1]

Sections 673 through 678 enumerate certain situations where a grantor or other person will "be treated as the owner of any portion of a trust" over which he possesses a proscribed power or beneficial interest.[2] Reference as to the tax consequences of being so treated, however, must be made to section 671 which provides:

> Where it is specified in this subpart that the grantor or another person shall be treated as the owner of any portion of a trust, there shall then be included in computing the taxable income and credits of the grantor or the other person those items of income, deductions, and credits against tax *of the trust* which are attributable to that portion *of the trust* to the extent that such items would be taken into account under this chapter in computing taxable income or credits against the tax of an individual. Any remaining portion *of the trust* shall be subject to subparts A through D. No items of a trust shall be included in computing the taxable income and credits of the grantor or of any other person solely on the grounds of his dominion and control over the trust under section 61 (relating to definition of gross income) or any other provision of this title, except as specified in this subpart. [Emphasis added.]

It is clear that the statute in its wording presupposes the existence of a valid trust. It is equally clear that the purpose of the statutory scheme of subpart E of subchapter J is merely to identify the person responsible for reporting certain income and deduction items realized by a trust. Nowhere does the statute state, much less "require," as the majority maintains,[3] that the trust not be recognized for tax purposes. Indeed, the regulations take a position to the contrary.

In discussing the concept of what is a "trust" for Federal tax

---

[1]Unfortunately, the majority has chosen to decide this complex issue regarding the separate transactional existence of a grantor trust without the benefit of the parties' thoughts on the matter. See n. 19 of the majority's opinion. Also, compare *Norwood v. Commissioner*, 66 T.C. 467, 469 (1976), with *Smith v. Commissioner*, 56 T.C. 263, 291 n. 17 (1971), cited by the majority in n. 19 of its opinion.

[2]"Portion" could include part or all of a trust depending upon the extent of a person's rights over its income and corpus. See sec. 1.671–3, Income Tax Regs. See also L. Schmolka, "Selected Aspects of the Grantor Trust Rules," U. Miami Ninth Inst. on Est. Plan., par. 1400 (1975).

[3]See text accompanying n. 17 of the majority opinion.

purposes, section 301.7701–4(a), Proced. & Admin. Regs., in an obvious reference to a grantor trust, states as follows:

> Usually the beneficiaries of * * * a trust do no more than accept the benefits thereof and are not the voluntary planners or creators of the trust arrangement. However, the beneficiaries of * * * a trust may be the persons who create it and *it will be recognized as a trust under the Internal Revenue Code * * * as * · * * if the trust had been created by others for them.* [Emphasis added.]

I believe the majority in its opinion, if not expressly, has effectively invalidated this regulation altogether.

I am not proposing that a grantor trust's existence should always be recognized for tax purposes; rather, I am merely contending that an examination should be made in each case to determine if some other congressional tax policy would best be served by not regarding the trust as a separate transactional entity. If such a policy does not exist, then, absent other reasons, I would not ignore the trust. My point can be illustrated by an examination of the two main cases which have addressed this issue.[4]

In *Swanson v. Commissioner*, 518 F.2d 59 (8th Cir. 1975), affg. a Memorandum Opinion of this Court, G created an irrevocable trust in which he had no beneficial interest. However, the trust instrument did permit him to amend the trust so long as such amendment did not vest in G any right to the trust's income or corpus. The trust purchased an insurance policy on G's life from a related corporation. Subsequently, G died and the trust collected approximately $914,000 compared with its total investment in the policy of about $208,000. We stated the issue as follows:

> Section 101(a) states that * * * amounts received under a life insurance policy are not includable in gross income. Section 101(a)(2)(B) provides that life insurance proceeds are includable in gross income in the case of a transfer for valuable consideration unless the transfer is to the insured * * * . The issue is whether the exception to the transfer for valuable consideration rule of section 101 is applicable to the transfer of life insurance policies to the Swanson Trusts. [T.C. Memo. 1974–61. Fn. ref. omitted.]

The taxpayer argued that because under section 674, G was treated as the "owner" of the entire trust and because he was

---

[4]For a brief but excellent discussion of this issue, see L. Schmolka, *supra* n.2.

also the insured under the policy, the proceeds received by the trust were excludable from its gross income under the general rule of section 101(a). The respondent, on the other hand, argued that the policies were transferred to the trust and not to G. In short, although G was the "owner" of the entire trust by virtue of section 674, respondent argued that the trust's existence should not be ignored for purposes of section 101.[5]

The Eighth Circuit held as follows:

> We cannot accept the government's contention that in this case Swanson, the grantor of the grantor-trusts, is not deemed the owner of the trusts for any purpose other than that of taxing trust income to him, and the trusts, therefore, retain their identity as a separate tax entity under Section 101(a)(2)(B). The provision in each trust instrument that it shall be subject to interpretation or amendment by the maker (except with respect to vesting property, income or corpus in himself as an individual) gave the grantor complete control over the insurance policies in question. Through his control over the trusts, he could exercise all of the incidents of ownership over the policies. He could, among other things, cause (1) a change in beneficiaries, (2) loans to be secured on the policies, or (3) even have the policies cancelled.

> \* \* \* \* \* \* \*

> The mere fact that the legislative history of Section 674 and related statutes indicates that the purpose of the legislation was to tax the income of grantor-trusts to the grantor does not require the strained construction of Section 101(a) urged by the government.

> We hold that in this case, since Swanson owned and controlled the trusts, the policies were transferred to the "insured" within the meaning of Section 101(a)(2)(B) and the net proceeds are therefore excludable from gross income under Section 101(a)(1). [518 F.2d at 63–64.]

The result reached in *Swanson* seems premised on the congressional policy behind section 101 rather than on the operation of sections 671 and 674. Section 101(a)(2)(B) permits the nongratuitous transfer of a life insurance policy to an insured. Whether the transfer was made to the "insured" is a factual question, the answer to which is dependent upon the insured's relationship to the policy subsequent to the transfer. Because G had the power to control the beneficial enjoyment of the policy, his relationship to the policy was sufficient to bring into play the congressional purpose of section 101(a). Surely, it cannot be said that G's interest in the policy arose from the operation of the grantor trust rules. In other words, sections 671

---

[5]Because of a concession made by respondent, this Court never reached the precise issue stated in the text and dealt with by the Eighth Circuit.

and 674 will not provide the answer to whether "transfer [was made] to the insured" within the meaning of section 101(a)(2)(B). Rather, that determination is primarily one of fact.

In *W & W Fertilizer Corp. v. United States*, 527 F.2d 621 (Ct. Cl. 1975), cert. denied 425 U.S. 974 (1976), the taxpayer was a subchapter S corporation from 1965 to 1970. The corporation had two shareholders, Lemuel, who owned 47 percent of the company's stock, and his brother, Fred, who owned 53 percent. In 1970 Lemuel transferred his entire 47-percent stock interest to a trust which he created. As the grantor, Lemuel reserved in himself the right to revoke the trust and revest its assets in himself at any time. There was no question that Lemuel was the "owner" of the entire trust under section 676(a) and therefore responsible for reporting all of its income and deductions under section 671.

Section 1371(a)(2), which contained one of the prerequisites for subchapter S status, provided that a "small business corporation" may not "have as a shareholder a person * * * who is not an individual." Respondent argued that because the trust was not an "individual" the corporation's subchapter S status should be terminated. The corporation, on the other hand, argued that because Lemuel was treated as the "owner" of the entire trust under section 676(a), the trust should be disregarded for tax purposes. The Court of Claims framed the issue as follows:

Hence, the resolution of this case turns on whether the revocable *inter vivos* trust described herein is to be accorded recognition for Federal tax purposes as a shareholder in taxpayer, or, instead, whether the grantor-beneficiary is to be so recognized and the trust disregarded. [527 F.2d at 623.]

In addressing the taxpayer's argument that Lemuel, because of the operation of the grantor trust rules, was the "owner" of the stock, the court held as follows:

Taxpayer's third contention is that because Lemuel, as grantor of the Woods Trust, is taxed on the trust income under the "grantor trust rules" of section 671 *et seq.*, the trust should be ignored. The argument is that it would be inconsistent not to consider him the owner of the shares for Subchapter S eligibility purposes and yet tax him as their "owner" on the income they produce. Taxpayer, however, misconceives the manner in which the "grantor trust rules" operate. They do not, as taxpayer urges, recognize the grantor as the legal "owner" of the property placed in trust. On the contrary, the rules arose under the Code because it was recognized by Congress that taxation of income is not concerned so much with refinements of title as it is with actual

command over the property taxed. *Corliss v. Bowers*, 281 U.S. 376 * * * (1930). The "grantor trust rules" treat the grantor as if he were the owner in cases where he has reserved to himself some of the powers normally attendant to outright ownership. Thus, their design is to expand the coverage of the taxing statute . On the other hand, Subchapter S was enacted as a remedial measure to relieve qualifying small business corporations of a tax otherwise payable. Section 1371(a)(2) limits the benefits of the Act to corporations whose stock is owned solely by individuals or estates. Where such a·deliberately specific qualification is imposed, we must strictly apply it lest the narrow benefit intended by Congress be unduly broadened. Hence, the "grantor trust rules," with the very purpose of expansion, and the qualification requirements of section 1371(a), with their restrictive purpose, are not analogous, and their comparison is not supportive of the taxpayer in this case.

Moreover, in making an argument based upon the applicability of the "grantor trust rules" taxpayer, in effect, concedes the existence and recognition of the Woods Trust for tax purposes because the rules themselves address taxation of trust income. If there were no trust for tax purposes, the rules would not apply. The applicability herein of the "grantor trust rules" embodied in section 671 *et seq.*, therefore, reinforces, rather than refutes, the argument that the Woods Trust must be recognized as the owner of taxpayer's stock. [527 F.2d at 627–628.]

Even though the result in *W & W Fertilizer Corp.* would be different in light of the amendment made to section 1371(a)(2) and the addition of section 1371(f) by the Tax Reform Act of 1976, the case appears to be correctly decided in view of the court's discussion of the remedial purpose of subchapter S.[6]

Under the facts of *Swanson* and *W & W Fertilizer Corp.*, the grantor was treated as the "owner" of the entire trust; nevertheless, as to the issue of whether the trusts should be ignored for Federal income tax purposes, the two courts reached opposite results. In my opinion, however, the two cases are not inconsistent. A careful reading of each case shows that the

---

[6]Amended sec. 1371(a)(2) and new sec. 1371(f) provide a "trust *all of which* is treated as owned by the grantor under subpart E" may be a shareholder in a subch. S corporation. (Emphasis added.) The statute, as written, would not appear to permit as a shareholder, a trust less than all of which is treated as owned by the grantor. Unfortunately, I believe the approach taken by the majority herein has arguably undercut this implicit limitation.

For example, assume that in year 1, G is a 100-percent shareholder in X corporation which is governed by subch. S. In year 2, G places all of his X stock along with $100,000 in trust for the benefit of his nephew, A, for A's life with remainder to A's estate. As grantor, G has the power to revoke the trust and revest in himself title to the X corporation stock only. By virtue of sec. 676(a), G would be treated as the "owner" of that portion of the trust which includes the X stock but not as to that portion which includes the $100,000. Because G is not treated as the "owner" of the entire trust, it would appear that under sec. 1371(a)(2) and (f), X corporation would no longer qualify as a subch. S corporation. However, under the majority's view of the grantor trust rules, that portion of the trust which includes the X stock would not exist for tax purposes and X corporation would not be disqualified from subch. S treatment on the basis of its stock ownership.

underpinning for each decision was not on the operation of sections 671, et seq.; rather, the crucial factor in both cases was the effectuation of a congressional policy expressed through another Code section when that section operated simultaneously with the grantor trust rules.[7]

In the instant case, the decision as to whether the trust established under the will of A. Lindsay O'Connor should be recognized for Federal income tax purposes should not be made as the majority does, on the basis of an examination of section 678. The majority essentially disregards the trust for purposes of determining whether the estate should be allowed a deduction under section 661. The proper inquiry in deciding this issue should be whether there is any overriding congressional policy embodied in section 661 which would mandate our disregarding the trust in this case. Under the facts of this case, the answer to this question clearly lies in the negative.

Section 661 essentially allows a trust or estate a deduction for distributions made to its beneficiaries. The regulations under section 643 provide that "A trust created under a decedent's will is a beneficiary of the decedent's estate." Sec. 1.643(c)–1, Income Tax Regs. The mere fact that a trust is also one governed by subpart E should be of no consequence, and indeed that appears to be the position of the Service in Rev. Rul. 57–214, 1957–1 C.B. 203, which involves a trust governed, as is the case here, by the provisions of section 678. This result should follow whether the beneficiary of a trust assigns her rights under the trust to her children, her corporation, her bank, to a charity, or to whomever. In light of the fact that no congressional policy would be served by ignoring the trust for purposes of the estate's section 661 deduction, I would accordingly not disregard its existence.[8]

---

[7]In *Terriberry v. United States*, an unreported case (M.D. Fla. 1974, 34 AFTR 2d 74–6267, 74–2 USTC par. 13,002), revd. 517 F.2d 286 (5th Cir. 1975), W, decedent's wife, created a revocable grantor trust and transferred several life insurance policies on the decedent's life to the trust. Decedent, H, was named cotrustee and was specifically prohibited from exercising any incidents of ownership in his individual capacity. Subsequently, H died and the issue was whether he died possessing sufficient incidents of ownership in the policies to cause the proceeds to be includable in his estate under sec. 2042. The District Court held that because W was treated as the "owner" of the policies for all tax purposes under the grantor trust rules, H could not be said to have died possessing any incidents of ownership to cause inclusion of the proceeds in his estate. The Fifth Circuit reversed. It is interesting to note that in its reversal, the Fifth Circuit dismissed out of hand as being unpersuasive the District Court's grantor trust reasoning. That reasoning formed the foundation of the District Court's decision just as it does in the opinion of the majority herein.

[8]Moreover, the Service in its ruling has not been entirely consistent in its treatment of the recognizability of a grantor trust for tax purposes. Compare Rev. Rul. 69–450, 1969–2 C.B. 168, and

As its second ground for ignoring the marital trust, the majority holds that the trust fails to meet the definition of a "trust" as set forth in section 301.7701–4(a), Proced. & Admin. Regs.

Under his will, A. Lindsay O'Connor made provision for the creation of a trust for the benefit of his wife. The trustees, under the will, were charged with various duties which included payment of the trust income to the widow for her life and the payment of the trust corpus at her direction. Exercising this latter right, decedent's wife completely assigned her interest in the trust to the O'Connor Foundation. Thereafter, approximately $20 million in property was distributed from decedent's estate to the trust over the next 3 years. Shortly after its receipt of the property, the trust, pursuant to the widow's directions, distributed this property to the foundation.

The majority in reaching its conclusions herein reasons that the trust's level of activity was so low as not to be recognizable for tax purposes. I cannot agree.

In my opinion, resolution of whether a distinct jural entity under State law may be ignored for tax purposes requires a determination of many factors. Certainly, the level of activity performed by the entity is an important consideration; however, in the absence of a tax avoidance scheme,[9] I believe the quantum of activity only need be "minimal." See *Strong v. Commissioner*, 66 T.C. 12, 24 (1976), affd. 553 F.2d 94 (2d Cir . 1977).

In the instant case, the activity of the trust under any reasonable interpretation of the facts was sufficient to exceed that standard. The trustees were under a duty to receive the property from the executors of the estate and administer the same until the appropriate time for distribution to the beneficiary. Specifically, they were required to collect the full share of principal and income allocable to the marital trust from the estate, which requirement could not be completed until the administration of the estate had been completed. In view of the fact that the trustees ultimately collected in excess of $20 million in cash and property from the estate, and because they

---

Rev. Rul. 57–214, 1957–1 C.B. 203, where the separate existence of a grantor trust is not ignored, with Rev. Rul. 73–584, 1973–2 C.B. 162, and Rev. Rul. 74–613, 1974–2 C.B. 153, where the trust's existence is apparently ignored.

[9] The majority, in n. 18, cites *Furman v. Commissioner*, 45 T.C. 360, 364 (1966), affd. per curiam 381 F.2d 22 (5th Cir. 1967). In that case we ignored a trust which only served as a vehicle for avoiding taxes. This is not the situation here, and for this reason I believe the case is not on point.

could be surcharged for their failure to perform properly, I believe it cannot reasonably be said that the activity of the trust was so low as not to meet the definition of a trust within the Code. Accordingly, I would recognize the marital trust as the recipient of the distributions made by the estate.

Adoption of my approach would not necessitate reaching the issue raised by *Mott v. United States*, 462 F.2d 512 (Ct. Cl. 1972), and the regulations under section 663.

More specifically, in the instant case, the estate would be allowed a section 661 deduction for any distributions it made to the marital trust. Since the marital trust, by virtue of the wife's power and subsequently the foundation's power over its corpus, is a section 678 trust, its taxation would be governed by section 671. Section 671 says that where a person is treated as the "owner" of a portion, all income and expenses of the trust attributable thereto are directly reportable by that person. The statute goes on to provide that any other portion of the trust not within the reach of sections 671 through 678 will be governed by sections 641 through 669. Because the wife and subsequently the foundation are treated as the "owner" of the entire trust, sec. 1.671–3(b)(3), Income Tax Regs., there is no "portion" of the trust that is governed by sections 641 through 669 and, accordingly, we need not decide the section 642(c), 661, 662, 663(a)(2), and *Mott* issue.[10]

STERRETT, *J.*, dissenting: I respectfully dissent from the

---

[10]The majority attempts to obfuscate this point in its n. 17. The footnote properly recognizes that if the marital trust exists for tax purposes then the estate would be entitled to a sec. 661 deduction for payments thereto. It also correctly points out that the foundation by virtue of secs. 671 and 678 would be responsible for reporting the income of the trust. It then goes on to make the curious statement:

"Because of the operation of section 678 at this level only, the issue of whether or not the trust may claim a section 661 deduction for its distributions to the foundation is mooted because the trust would have no income to offset with a section 661 deduction."

I cannot agree with the majority's interpretation of the operation of subpart E. The question of whether the marital trust is entitled to a sec. 661 deduction for distributions it makes to the foundation is, of course, mooted. But the reason it is mooted is not "because the trust would have no income to offset with a section 661 deduction;" rather, the reason is because the penultimate sentence in sec. 671 essentially says that where, as is the case here, an entire trust is governed by the provisions of subpart E, sec. 661 does not even apply.

The footnote goes on to make the misstatement that the trust has no income. However, sec. 671 refers on its face to the "income * * * of the trust." A correct interpretation of the statute is that the trust does indeed have income. Sec. 671 merely identifies who shall report it.

majority's conclusion that "a literal interpretation of section 661(a)(2), which would permit (subject to the distributable net income ceiling) the deductibility of all amounts distributed and not otherwise expressly disallowed (see *Mott v. United States,* 462 F.2d 512, 517 (Ct. Cl. 1972)) would be inconsistent with the statutory framework and overall legislative objectives of subchapter J and that, as applied to the circumstances herein, respondent's regulations should be sustained." In my view, analysis of the applicable statutes and legislative history amply supports the opposite result.

Although the majority's view that the marital trust should not be recognized for Federal income tax purposes seems questionable, in any event, resolution of the alleged conflict between sections 642(c) and 661(a)(2) must be determined.[1] This is so because even if the marital trust is recognized for Federal tax purposes, section 661 permits the estate a deduction for all amounts distributed by it (subject to the D.N.I. ceiling), and then upon distribution by the trust to the foundation, the sections 642(c) and 661(a)(2) issue must be scrutinized.

The legislative history under subchapter J, part I, provides us with three general principles relating to distributions by estates and trusts, to wit: (1) While estates and trusts are to be treated as separate taxable entities, they are treated substantially as conduits through which income passes to the beneficiary; (2) all distributions are deductible by the estate or trust and are taxable to the beneficiaries to the extent of the estate's or trust's current income; and (3) under the concept of distributable net income, the tracing of such distributions is not required. S. Rept. 1622, 83d Cong., 2d Sess. (1954), U.S. Code Cong. & Adm. News 4715–4717; see also H. Rept. 1337, 83d Cong., 2d Sess. (1954), U.S. Code Cong. & Adm. News 4086–4087.

Implementation of these principles, for the estate and trusts herein, is accomplished by sections 661 and 662. Section 661(a) allows a deduction by an estate or trust, not exceeding D.N.I.,

---

[1] Under the majority's view sec. 678 precludes recognition of the marital trust for tax purposes and the foundation is treated as the owner of the trust property. A logical extension of this view would seem to require the application of sec. 678 to the estate, and therefore the estate would also have no income vis-a-vis the foundation. To my mind, the logical extension of the majority's view demonstrates the weakness of its original premise. It is apparent that Congress, in enacting sec. 678, did not recognize this problem (the applicability of sec. 678 to an estate), but as the majority has decided the case under secs. 642(c) and 661(a)(2) resolution of the issue, for purposes of this dissent, is unnecessary.

for any amount of income "required to be distributed currently" (sec. 661(a)(1)) and "any other amounts properly paid or credited or required to be distributed" (sec. 661(a)(2)). Then, with some limitations, section 662(a) includes in "the gross income of a beneficiary" amounts "paid, credited or required to be distributed" as specified in section 661(a).

In addition to the distribution deduction, Congress has provided in section 642(c) that an estate or trust shall be allowed a deduction, in computing its taxable income (in lieu of a section 170(a) deduction), for any amounts of gross income paid, permanently set aside, or otherwise used exclusively for charitable purposes. Therefore, "a trust or estate is allowed an unlimited deduction for charitable contributions and is not subject to the limitation imposed on the charitable contributions of individuals." H. Rept. 1337, *supra*, U.S. Code Cong. & Adm. News at 4332. See also S. Rept. 1622, *supra*, U.S. Code Cong. & Adm. News at 4982. In view of this broad deduction Congress enacted section 663(a)(2) as follows:

(a) EXCLUSIONS.—There shall not be included as amounts falling within section 661(a) or 662(a)—

\*     \*     \*     \*     \*     \*     \*

(2) CHARITABLE, ETC., DISTRIBUTIONS.—Any amount paid or permanently set aside or otherwise qualifiying for the deduction provided in section 642(c) \* \* \*

Therefore, upon a reading of sections 642(c) and 663(a)(2), there is no doubt that if an amount qualifies for deduction under section 642(c) it cannot also be deducted under section 661(a). This was the result intended by Congress and it is supported by the legislative record as follows:

Subsection (a)(2) corresponds to subsection (b)(3) of the House bill. It provides that any amount paid, permanently set aside, or to be used for the purposes specified in section 642(c) (relating to charitable, etc., deductions) is excluded from the provisions of sections 661 and 662. For this purpose the deduction provided in section 642(c) is computed without regard to section 681. Since the estate or trust is allowed a deduction under section 642(c) for amounts paid, permanently set aside, or otherwise qualifying for the deduction provided in that section, such amounts are not allowed as an additional deduction for distributions, nor are they treated as amounts distributed for purposes of section 662 in determining the amounts includible in gross income of the beneficiaries. [S. Rept. 1622, *supra*, U.S. Code Cong. & Adm. News at 4995. See also H. Rept. 1337, *supra*, U.S. Code Cong. & Adm. News at 4344.]

Furthermore, the Court of Appeals for the Second Circuit, to

which an appeal in this case lies, has stated that section 642(c) was enacted "apparently because Congress did not wish charitable gifts by trusts to be subject to the percentage limitations imposed on individuals in section 170(b). Having authorized this broad deduction in section 642(c), Congress enacted section 663(a)(2) to prevent the trust from having a double deduction and a beneficiary from claiming a charitable deduction already taken by the trustee." *Statler Trust v. Commissioner*, 361 F.2d 128, 132 (2d Cir. 1966).

Therefore, neither the legislative history nor the statute requires a conclusion that an amount distributed by an estate or trust to a charity, which does not meet the requirements of section 642(c), cannot under any circumstances qualify for a deduction under section 661(a). Under a literal interpretation of the statute a finding that section 642(c) is inapplicable (the majority did so at page 173) in fact automatically makes section 663(a)(2) inapplicable.[2]

In my opinion section 1.663(a)–2,[3] Income Tax Regs., is inapplicable to the facts before us; the regulation is consistent with the aforenoted statute and legislative history. Congress having authorized an exceptionally broad deduction for charitable gifts under section 642(c) understandably wanted to prevent a double deduction under section 661. To deny the deduction under section 642(c) because of its inapplicability and then to further deny a distribution deduction under section 661 would be the killing of two birds with one stone. In my view the second sentence of section 1.663(a)–2, Income Tax Regs., must be read with the first sentence to preclude a deduction under section 661 when both sections 642(c) and 661 are applicable. However, where section 642(c) is inapplicable one must then test the deductibility of the distribution to the foundation under section 661.

It cannot be gainsaid that distributions to the foundation were

---

[2] See M. Ferguson, J. Freeland, & R. Stephens, Federal Income Taxation of Estates and Beneficiaries, 379 (1970).

[3] Sec. 1.663(a)–2. Charitable, etc., distributions.

Any amount paid, permanently set aside, or to be used for the charitable, etc., purposes specified in section 642(c) and which is allowable as a deduction under that section is not allowed as a deduction to an estate or trust under section 661 or treated as an amount distributed for purposes of determining the amounts includible in gross income of beneficiaries under section 662. Amounts paid, permanently set aside, or to be used for charitable, etc., purposes are deductible by estates or trusts only as provided in section 642(c). * * *

amounts "properly paid" within the meaning of section 661(a)(2). It becomes necessary, however, to determine whether the foundation qualifies as a "beneficiary" of decedent's estate[4] so as to permit the deduction of distributions to it under section 661(a). Implicit in this is that section 661 deductions are confined to distributions properly paid to beneficiaries.[5]

Section 643(c) provides that "the term 'beneficiary' includes heir, legatee, and devisee." For purposes of the provisions here in issue "includes" is not deemed to exclude "other things otherwise within the meaning of the term defined." Sec. 7701(b). In construing section 643(c) there is no legislative history to aid us and judicial authorities are almost nonexistent.[6]

In *duPont Testamentary Trust v. Commissioner*, 66 T.C. 761, 767 (1976), we held that to be deductible under section 661, "a distribution must be made to a beneficiary in his status as a beneficiary, not as a creditor or in some other capacity." In the present case the source of the foundation's interest is the gratuitous assignment by Mrs. O'Connor of her right to income and corpus of the marital trust.

The validity of an assignment is determined under local law, *Blair v. Commissioner*, 300 U.S. 5 (1937), and under New York law Mrs. O'Connor's assignment was valid. See New York Est., Powers & Trusts Law, Sec. 7-1.5 (McKinney 1967). Thus, the question narrows to whether the foundation, as an assignee-donee, is a "beneficiary" under section 643(c). Absent judicial construction or legislative history we must look to the plain meaning of the term "beneficiary."

The beneficiary of an estate or trust is simply the person for whose benefit the trust property is held by the trustee. See G. Bogert, The Law of Trusts and Trustees, sec. 1, p. 4 (2d ed. 1965). Although the majority opinion correctly notes that *Blair v.*

---

[4]Since the validity of the marital trust for Federal income tax purposes is irrelevant with respect to the sec. 661(a) deductions, reference to decedent's estate or the marital trust shall be used interchangeably.

[5]This construction is confirmed by the legislative history as follows:

"This section (subject to the limitations discussed below) allows an additional deduction to estates or trusts for amounts paid, credited, or required to be distributed to beneficiaries. * * * " [H. Rept. 1337, 83d Cong., 2d Sess. A198 (1954); S. Rept. 1622, 83d Cong., 2d Sess. 347 (1954); U.S. Code Cong. & Adm. News 4988.]

[6]Except for *duPont Testamentary Trust v. Commissioner*, 66 T.C. 761 (1976), the cases cited by the majority (at p. 179 of its opinion) pertain to the definition of beneficiary under sec. 642(h). In my opinion these cases are inapposite to the inquiry herein involved because the term "beneficiary" under sec. 642(h) has a narrower purpose than in sec. 643(c) in that it is intended as a relief provision to the beneficiary. See *Sletland v. Commissioner*, 43 T.C. 602, 610 (1965).

*Commissioner, supra,* specifically involved the issue of whether an assignor of an income interest continued to be liable for the tax upon the income or whether the assignees were so liable, in my opinion, the case is helpful in defining the term "beneficiary" herein. The Court stated at 300 U.S. 12:

> The Government points to the provisions of the revenue acts imposing upon the beneficiary of a trust the liability for the tax upon the income distributable to the beneficiary. But the term is merely descriptive of the one entitled to the beneficial interest. These provisions cannot be taken to preclude valid assignments of the beneficial interest, or to affect the duty of the trustee to distribute income to the owner of the beneficial interest, whether he was such initially or becomes such by valid assignment. The one who is to receive the income as the owner of the beneficial interest is to pay the tax. *If under the law governing the trust the beneficial interest is assignable, and if it has been assigned without reservation, the assignee thus becomes the beneficiary and is entitled to rights and remedies accordingly.* We find nothing in the revenue acts which denies him that status. [Emphasis added; fn. ref. omitted.]

Thus an assignee steps into the shoes of its assignor, here the transferring beneficiary. "It does not matter how the benefits are to come to the beneficiary. The important trust concept is that he has a right to obtain them." G. Bogert, The Law of Trusts and Trustees, *supra,* sec. 188 at 289 (2d ed. 1965). It is an elementary principle of trust law that the trustee holds the trust property for the benefit of the beneficiary. After the assignment the foundation was entitled to and did receive the benefits of the trust. Clearly, it was entitled to enforce the duty of the trustee. Thus, in my opinion, the foundation received the benefits of the trust in its capacity as a "beneficiary."

Having decided that the foundation qualifies as a "beneficiary" one final point remains. That is, whether deductions should be denied for amounts distributed to the foundation because section 661(a) permits deductions only for distributions to *taxable* beneficiaries. In my opinion the answer is no.

As previously stated sections 661 and 662 together apply the "conduit principle" to the basic pattern of taxability of complex trusts. Without these provisions a trust would compute its taxable income and pay the tax thereon according to rules substantially similar to those applicable to individuals. See secs. 641–643. Sections 661 and 662 in general require, however, that the beneficiary and not the trust be taxed (to the extent of the trust's distributable net income) on any amounts which are paid, credited, or required to be distributed to that beneficiary.

Section 661 permits the trust a deduction for the amounts so distributed whereas section 662 requires their inclusion in the gross income of the beneficiary. See *duPont Testamentary Trust v. Commissioner, supra* at 765–766.

In my opinion, even if the beneficiary is exempt from tax on distributions required to be included in gross income under section 662, distributions to that beneficiary would still be deductible by the trust under section 661. Congress' intent in enacting the distribution rules cannot be read in a vacuum. Thus Congress' statement that "The bill adopts the general principle that to the extent of the trust's current income all distributions are deductible by the estate or trust and taxable to the beneficiaries,"[7] must be read in conjunction with other statutory provisions specifically exempting income. In *Helvering v. Butterworth*, 290 U.S. 365 (1933), which antedated the enactment of subchapter J, the Court, in discussing the statute then in effect, stated at 290 U.S. 369, that the evident general purpose of the statute was "to tax in some way the whole income of all trust estates." However, the Court observed at 290 U.S. 369, that "Certainly, Congress did not intend any income from a trust should escape taxation *unless definitely exempted.*" (Emphasis supplied.) It follows that, since the income to the foundation is "definitely exempted" under section 501, effect must be given to such provision.

Similarly in Rev. Rul. 74–299, 1974–1 C.B. 154, a nonexempt employees' trust was permitted a deduction under section 661 despite the fact that the specific provisions of section 402(b), rather than section 662(a), applied to the employee as beneficiary of the trust. Additionally, in *Estate of Tait v. Commissioner*, 11 T.C. 731 (1948), remanded by stipulation in compromise (4th Cir. 7/20/49), the parties agreed that the trust would be permitted a deduction for payments made to four foreign domiciliaries who were exempt from U.S. tax under a treaty between the United States and Canada.

I respectfully submit that the trust or estate, as one may have it, should be allowed a section 661(a) deduction for amounts

---

[7] H. Rept. 1337, 83d Cong., 2d Sess. 60 (1954); S. Rept. 1622, 83d Cong., 2d Sess. (1954), U.S. Code Cong. & Adm. News, 4714–4715.

distributed to the foundation and, accordingly, the foundation will then pick up its allocable share of D.N.I. under section 662.

DRENNEN AND WILES, *JJ.*, agree with this dissenting opinion.