803 F.2d 1363
 58 A.F.T.R.2d 86-6152, 86-2 USTC P 13,698,
86-2 USTC P 9777
 UNITED STATES TRUST COMPANY, Trustee, Jean C. Lindsey,
Cynthia C. Saint-Amand, Margaret A. Chisholm, and the Estate
of Alexander F. Chisholm, Deceased, Jean C. Lindsey,
Successor Executrix, Plaintiffs-Appellees,
v.
The INTERNAL REVENUE SERVICE, an Agency of the United States
of America, Defendant,
The United States of America, Defendant-Appellant.
 No. 85-4947.
 United States Court of Appeals,
Fifth Circuit.
 Nov. 7, 1986.
Rehearing Denied Dec. 5, 1986.
 
 Martha B. Brissette, Appellate Sec., William D.M. Holmes, Tax Div., Dept. of Justice, Roger M. Olsen, Acting Asst. Atty. Gen., Michael L. Paup, Chief, Appellate Sec., Robert A. Bernstein, Washington, D.C., for defendant-appellant.
 Samuel E. Scott, Heidelberg, Woodliff & Franks, Jackson, Miss., for plaintiffs-appellees.
 Appeal from the United States District Court for the Southern District of Mississippi.
 Before JOLLY, HILL, and JONES, Circuit Judges.
 ROBERT MADDEN HILL, Circuit Judge:
 
 
 1
 In this appeal we are asked to determine whether an estate taxpayer which has been allowed a deduction from its federal estate tax return for the amount of a bequest made to a charitable organization is also entitled to a deduction for the amount of the bequest from its income tax return during the taxable year that the bequest was made. The United States Trust Company and the Estate of Alexander F. Chisholm (collectively, taxpayer), brought an action against the Internal Revenue Service (IRS) seeking a refund of federal income taxes paid by the taxpayer. On cross-motions for summary judgment, the district court denied the IRS' motion and entered judgment for the taxpayer. United States Trust Co. v. Internal Revenue Service, 617 F.Supp. 575 (S.D.Miss.1985). Based upon our interpretation of the relevant tax statutes and treasury regulation, we reverse and remand for entry of judgment for the IRS.
 
 I.
 A.
 
 2
 The facts in this case are not in dispute. Alexander F. Chisholm (Chisholm), a resident of Mississippi, died on March 12, 1974, leaving a valid will dated May 17, 1967. Chisholm's will was admitted to probate in the Chancery Court of the Second Judicial District of Jones County, Mississippi. In article three of his will, Chisholm made a specific bequest to the Chisholm Foundation (Foundation), a New York-based charity organization.[1] The bequest provided:
 
 
 3
 I give to the Chisholm Foundation, a New York membership corporation, a sum equal to ten percent (10%) of the value of my gross testamentary estate as finally determined in the Federal estate tax proceeding relating to my Estate, provided that such bequest is deductible from my gross Estate in determining my taxable Estate for Federal Estate tax purposes.
 
 
 4
 Ten percent of Chisholm's gross testamentary estate was later calculated to be $2,473,719.
 
 
 5
 From Chisholm's death in March to December 31, 1974, no part of the specific bequest to the Foundation was paid. During 1975 $1,505,000 in cash and $512,635 in stock was distributed to the Foundation in partial satisfaction of the specific bequest. The cash payments were made in twelve monthly payments from a bank account containing monies derived from the original corpus of Chisholm's estate and the income that had accrued in 1974 and 1975.[2] The remaining balance of the bequest to the Foundation was paid in 1976.
 
 
 6
 On its 1976 federal estate tax return, the taxpayer claimed an estate tax deduction, as allowed by section 2055(a)(2)[3] of the Internal Revenue Code of 1954 (the Code),[4] for the entire $2,473,719 bequest which had been distributed to the Foundation during 1975 and 1976. The deduction was allowed by the IRS for the full amount of the distributions.
 
 
 7
 In 1976 the taxpayer also filed an income tax return for the year 1975. On this return the taxpayer claimed an income tax deduction for a part of the cash distributions made to the Foundation. Of the $1,505,000 in cash distributed to the Foundation in 1975, the taxpayer deducted $1,240,467 from its gross income as a deduction for distributions to a beneficiary under section 661(a)(2).[5] These distributions could not qualify for a deduction as distributions to a charitable organization under section 642(c) because Chisholm's will did not direct that the distributions come from gross income. After auditing the 1975 income tax return, the IRS disallowed the deduction. Following unsuccessful protests by the taxpayer, the IRS issued a delinquency notice for taxes and interest due. The taxpayer paid the delinquency assessment under protest. In 1982 the taxpayer filed an administrative claim requesting a full refund; in 1983 the IRS denied the claim for a refund. Thereafter, the taxpayer filed suit seeking a refund of the income tax assessment and interest.
 
 B.
 
 8
 The case came before the district court on cross-motions for summary judgment. The court entered judgment for the taxpayer because "the plain language of the statute justifies the deduction." The court recognized that section 661 authorized deductions for "any amounts properly paid or credited" and then concluded that the distributions to the Foundation in 1975 were clearly amounts properly paid. 617 F.Supp. at 582. While agreeing that the taxpayer could not deduct the distributions under section 642(c), the district court went on to hold that nothing in section 663, which excludes 642(c) deductions from section 661's framework, prohibited the taxpayer's deduction in this case. In addressing the treasury regulation upon which the IRS relied in denying the deduction, the court concluded that the regulation was invalid. The court gave the regulation no deference since it was promulgated under the general authority provision of section 7805. Id. at 581.
 
 
 9
 The district court also refused to follow other decisions which had upheld the validity of the relevant treasury regulation. The court believed that these cases had been decided incorrectly in light of the language of sections 661 and 663. Id. at 582. The court concluded that the statutes simply did not prohibit the taxpayer's claimed income tax deduction, that the treasury regulation which did was invalid, and, therefore, the taxpayer was entitled to a refund.
 
 
 10
 The IRS filed a timely motion to alter or amend the judgment pursuant to Fed.R.Civ.P. 59(e). The district court denied the motion, and the IRS perfected a timely appeal to this court. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291.
 
 II.
 
 11
 The issue as stated before is: May the taxpayer claim an income tax deduction for distributions of present income to a charitable beneficiary under section 661(a)(2) when the distributions did not otherwise qualify as a section 642(c) deduction and the taxpayer had already claimed and received a federal estate tax deduction for the same distributions? In answering this question we decide whether treasury regulation Sec. 1.663(a)-2 is valid. We begin our discussion with a general overview of the relevant tax statutes and treasury regulation involved and then proceed to a resolution of the above issue.
 
 A.
 
 12
 The statutory framework for federal income taxation of decedents' estates and their beneficiaries is set forth in Subchapter J of the Code. 26 U.S.C. Sec. 641 et seq. Subchapter J contains a system of rules which determine the proper amounts of estate income subject to tax and who should bear the burden of that tax. In this system, Congress has adopted a "conduit principle" of taxing estates in which an estate is treated as an independent taxable entity and is taxed on accumulated income which is not distributed, either actually or presumptively, to its beneficiaries. In contrast, if the income is distributed to a beneficiary, or is presumed to be distributed, the income is not taxed against the estate but against the beneficiary. This result is accomplished by permitting the estate a deduction for the amount distributed and by requiring the beneficiary to include the distribution in his gross income. The conduit system effectuates the underlying policy of Subchapter J to tax estate income only once--either to the estate or to the beneficiary, or in part to each. See Generally M. Ferguson, J. Freeland & R. Stephens, Federal Income Taxation of Estates and Beneficiaries 370, 382 (1970); A. Michaelson, Income Taxation of Estates & Trusts 57 (1974 rev.).
 
 
 13
 Sections 661 and 662 of the Code contain the conduit system for taxing estates which accumulate income, such as the one involved in this case. The contested deduction in the present case was in fact claimed under section 661(a)(2). Section 661(a) provides:
 
 
 14
 (a) Deduction. In any taxable year there shall be allowed as a deduction in computing the taxable income of an estate or trust (other than a trust to which subpart B applies) the sum of--
 
 
 15
 (1) any amount of income for such taxable year required to be distributed currently (including any amount required to be distributed which may be paid out of income or corpus to the extent such amount is paid out of income for such taxable year); and
 
 
 16
 (2) any other amounts properly paid or credited or required to be distributed for such taxable year;
 
 
 17
 but such deduction shall not exceed the distributable net income of the estate or trust.
 
 
 18
 Section 662 provides generally that any income distributed to beneficiaries from an estate is to be included in the beneficiaries' gross incomes for taxing purposes. Under the conduit system of sections 661 and 662, it is unnecessary to trace the source of a particular distribution in order to determine whether the distribution should be taxed as income to the beneficiaries because sections 661 and 662 embody a conclusive presumption that estate fiduciaries will distribute current income before depleting the corpus of the estate, unless the governing instrument specifically directs them to do otherwise.[6] See Pullen v. United States, 45 A.F.T.R.2d 80-381, 80-383 (D.Nev. Nov. 29, 1979), aff'd, No. 80-1034 (8th Cir. Sept. 29, 1980) (mem.).
 
 B.
 
 19
 In the instant case we are concerned with how the above conduit taxation rules accommodate, if at all, charitable distributions made pursuant to charitable bequests. We recognize that the purpose of tax benefits or deductions arising from charitable distributions is to encourage the making of charitable bequests. E.g., United States v. Benedict, 338 U.S. 692, 70 S.Ct. 472, 94 L.Ed. 478 (1950). Several tax benefits are given to an estate that includes a charitable bequest.
 
 
 20
 One such benefit is the estate tax deduction embodied in section 2055(a)(2). Section 2055(a)(2) allows an estate to reduce its federal estate tax liability by deducting from the gross value of the estate the amount it pays to satisfy a charitable bequest that is to be funded by property owned by the decedent at death. In this case, the taxpayer was allowed a section 2055(a)(2) deduction for the full amount of its distributions to the Foundation, and the IRS concedes the validity of this deduction.
 
 
 21
 Another tax benefit conferred upon estates which contain charitable bequests is contained in section 642(c). Section 642(c) states in part:
 
 
 22
 (c) Deductions for amounts paid or permanently set aside for a charitable purpose.
 
 
 23
 * * *
 
 
 24
 * * *
 
 
 25
 (i) General Rule. In the case of an estate or trust ... there shall be allowed as a deduction in computing its taxable income ... any amount of the gross income, without limitation, which pursuant to the terms of the governing instrument is, during the taxable year, paid....
 
 
 26
 Thus, the deduction under section 642(c) is allowed only if the relevant governing instrument provides that the bequest be funded solely from the "gross income" of the estate.
 
 
 27
 As the plain language of sections 2055(a)(2) and 642(c) demonstrates, Congress intended that the benefit for a charitable bequest be conferred only once--either as an offset against the gross value of the estate or as an offset against income. This intent is accomplished by limiting section 2055(a)(2) deductions to the value of the property that is included in the gross estate at the time of decedent's death. Thus, no estate tax deduction is available for amounts that are paid to a charitable organization at the direction of the governing instrument from estate income. The tax benefit for income distributions is then bestowed by section 642(c) which allows deductions for amounts payable out of gross income.
 
 
 28
 In light of these beneficial tax provisions for charitable bequests, the apparent exclusion of charitable distributions from the conduit taxing rules is reflected in section 663(a)(2). Section 663 provides for certain exclusions from the conduit principles of sections 661 and 662. Section 663(a)(2) states:
 
 
 29
 (a) Exclusions. These shall not be included as amounts falling within Section 661(a) or 662(a)--
 
 
 30
 * * *
 
 
 31
 * * *
 
 
 32
 (2) Charitable, etc. Distributions. Any amount paid or permanently set aside or otherwise qualifying for the deduction provided in Section 642(c)....
 
 
 33
 Therefore, if an estate may take a section 642(c) deduction for a distribution to a charitable organization, it cannot also take a section 661(a)(2) deduction for the same distribution. As one court has noted, the relevant provisions of the Code reflect a "symmetry which insures that all charitable contributions result in a tax benefit, but precludes a double benefit." Pullen v. United States, 45 A.F.T.R.2d 80-381, 80-383 (D.Nev. Nov. 29, 1979), aff'd, No. 80-1034 (8th Cir. Sept. 29, 1980) (mem.).
 
 
 34
 Furthermore, the committee reports accompanying the enactment of the Code support the conclusion that Congress did not intend the general conduit taxation rules to apply to charitable distributions. See generally H.R.Rep. No. 1337, 83rd Cong., 2d Sess. A193, A200, A205, reprinted in 1954 U.S.Code Cong. & Adm.News 4017, 4332-33, 4339, 4344; S.Rep. No. 1622, 83rd Cong., 2d Sess. 341-42, 348-50, 354, reprinted in 1954 U.S.Code Cong. & Adm.News 4982-83, 4989-91, 4995. Both the House and Senate Reports state:
 
 
 35
 Paragraph (3) provides that any amounts paid, permanently set aside or to be used for the purposes specified in section 642(c) is excluded from the provisions of section 661 and 662. Since the estate or trust is allowed a deduction under section 642(c) for these amounts, they are not allowed as an additional deduction for distributions nor are they treated as amounts distributed for purposes of section 662 in determining the amounts includible in the gross income of beneficiaries.
 
 
 36
 H.R.Rep. No. 1337, at 4344; S.Rep. No. 1622, at 4995 (emphasis added).
 
 
 37
 One final fact bolstering our observation that charitable distributions are not considered in the conduit principles of sections 661 and 662 is that Congress has expressly refused to incorporate charitable distributions into the taxing scheme of section 661. In 1960 House Bill 9662 would have amended section 661(a) to encompass all charitable distributions, while eliminating the deduction under section 642(c). See H.R. 9662, 86th Cong., 2d Sess. Secs. 102(b), 103(g), 106(a), 107, 108(a) (1960). The House committee report accompanying the bill expressly recognized that deductions for charitable distributions under existing law required tracing and that such distributions therefore fell outside sections 661 and 662 since they did not. H.R.Rep. No. 1231, 86th Cong., 2d Sess. 9-10 (1960). This modification to include all charitable distributions in the conduit taxation scheme was rejected.
 
 C.
 
 38
 With the above background we turn to the treasury regulation at issue in this case. Treasury regulation 26 C.F.R. Sec. 1.663(a)-2 (1986) states in pertinent part:
 
 
 39
 Any amount paid, permanently set aside, or to be used for charitable, etc., purposes specified in section 642(c) and which is allowable as a deduction under that section is not allowed as a deduction to an estate or trust under section 661 or treated as an amount distributed for purposes of determining the amounts includible in gross income of beneficiaries under section 662. Amounts paid, permanently set aside, or to be used for charitable, etc., purposes are deductible by estates or trusts only as provided in section 642(c).
 
 
 40
 * * *
 
 
 41
 As the district court concluded, the first sentence of the regulation tracks the statute, but the second sentence reflects the position that all charitable distributions by an estate or trust, are not part of the conduit taxation scheme of sections 661 and 662.
 
 
 42
 All parties agree that the taxpayer was not entitled to a section 642(c) deduction because Chisholm's will did not specifically provide that the bequest was to be funded from gross income. Therefore, the outcome of this case depends upon the construction and validity of the second sentence of treasury regulation Sec. 1.633(a)-2.
 
 
 43
 The taxpayer now argues, and the district court found below, that section 661's language allowing a deduction from income of "amounts properly paid" on its face authorizes the deduction it claims. The taxpayer concludes, as the district court did, that the treasury regulation is invalid since (1) the statute's clear language is controlling, and (2) section 663, the statute supporting the regulation, is inapplicable because no section 642(c) distribution is involved. The IRS counters that the regulation is a validly authorized interpretation of Subchapter J's taxation scheme.
 
 III.
 
 44
 We begin our evaluation of treasury regulation Sec. 1.663(a)-2 by asking whether it is a necessary administrative interpretation promulgated under authority of section 7805.[7] If it is an unnecessary regulation in light of the statute's language, it will deserve little deference because of the limited scope of section 7805 in such situations. See United States v. Vogel Fertilizer Co., 455 U.S. 16, 24, 102 S.Ct. 821, 827, 70 L.Ed.2d 792 (1982). If, however, the regulation is a necessary interpretation of a general statutory provision it will deserve more deference from us. See United States v. Cartwright, 411 U.S. 546, 550, 93 S.Ct. 1713, 1716, 36 L.Ed.2d 528 (1973) (quoting United States v. Correll, 389 U.S. 299, 307, 88 S.Ct. 445, 450, 19 L.Ed.2d 537 (1967) ).
 
 
 45
 We are of the opinion that section 661(a)(2)'s "amounts properly paid" language is not as clear and unambiguous as the taxpayer contends and the district court found. A literal interpretation of "amounts properly paid" would undercut the conduit taxation system established in Subchapter J. Estate of O'Connor v. Commissioner, 69 T.C. 165, 178 (1977) (en banc). As several courts have noted, a literal reading of section 661(a)(2)'s language would allow an estate to deduct payments to creditors, an action certainly not intended by Congress.[8] See Du Pont Testamentary Trust v. Commissioner, 66 T.C. 761, 767 (1976) aff'd, 574 F.2d 1332, 1332 (5th Cir.1978) (per curiam); see also Mott v. United States, 462 F.2d 512, 517, 199 Ct.Cl. 127 (1972) (en banc), cert. denied, 409 U.S. 1108, 93 S.Ct. 902, 34 L.Ed.2d 688 (1973). Moreover, a literal interpretation of section 661(a)(2) would allow an estate a double tax benefit in many situations, such as a deduction of expenses under section 212 and then again under section 661. We, therefore, believe that section 661's "amounts properly paid" is "so general [a term] as to render an interpretive regulation appropriate." Helvering v. Reynolds Tobacco Co., 306 U.S. 110, 114, 59 S.Ct. 423, 425, 83 L.Ed. 536 (1939).
 
 
 46
 In the area of charitable distributions and their deductibility under section 661(a)(2), several other courts agree with our conclusion that "amounts properly paid" is a term subject to necessary interpretation. See Mott v. United States, 462 F.2d 512, 516-17, 199 Ct.Cl. 127 (1972) (en banc), cert. denied, 409 U.S. 1108, 93 S.Ct. 902, 34 L.Ed.2d 688 (1973); Estate of O'Connor v. Commissioner, 69 T.C. 165, 177-79 (1977) (en banc); Pullen v. United States, 45 A.F.T.R. 80-381, 80-384 (D.Nev. Nov. 29, 1979), aff'd, No. 80-1034 (8th Cir. Sept. 29, 1980) (mem.); cf. Treas.Reg. Sec. -2(c) (1956) (provides that the term "any other amounts properly paid" is to be defined with reference to section 663(a) and the regulations thereunder).
 
 
 47
 Since section 661(a)(2)'s language is properly subject to interpretative construction by the IRS under the authority of section 7805, we follow the Supreme Court's recent instructions on reviewing the validity of a treasury regulation, such as Sec. 1.663(a)-2. The Court has stated:
 
 
 48
 In such a situation, this Court customarily defers to the regulation, which if "found to 'implement the congressional mandate in some reasonable manner,' must be upheld." (citations omitted).
 
 
 49
 We do this because "Congress has delegated to the [Secretary of the Treasury and his delegate, the] Commissioner [of Internal Revenue], not to the courts, the task of prescribing 'all needful rules and regulations for the enforcement' of the Internal Revenue Code." (citations omitted). That delegation helps ensure that in "this area of limitless factual variations," like cases will be treated alike. It also helps guarantee that the rules will be written by "masters of the subject," (citation omitted), who will be responsible for putting the rules into effect.
 
 
 50
 In determining whether a particular regulation carries out the congressional mandate in a proper manner, we look to see whether the regulation harmonizes with the plain language of the statutes, its origin, and its purpose. A regulation may have particular force if it is a substantially contemporaneous construction of the statute by those presumed to have been aware of congressional intent. If the regulation dates from a later period, the manner in which it evolved merits inquiry. Other relevant considerations are the length of time the regulation has been in effect, the reliance placed on it, the consistency of the Commissioner's interpretation, and the degree of scrutiny Congress has devoted to the regulation during subsequent re-enactments of the statute. (citations omitted).
 
 
 51
 National Muffler Dealers Association Inc. v. United States, 440 U.S. 472, 476-77, 99 S.Ct. 1304, 1306-07, 59 L.Ed.2d 519 (1979); see also McDonald v. Commissioner, 764 F.2d 322, 321 (5th Cir.1985); Zemurray Foundation v. United States, 687 F.2d 97, 100-01 (5th Cir.1982).
 
 
 52
 Treasury regulation Sec. 1.663(a)-2 was promulgated in 1956 only two years after Subchapter J was enacted. See Treas. reg. Sec. 1.663(a)-2, T.D. 6217, 1956 C.B. 336, 389-90. We believe it is reasonable to conclude that the regulation represents a substantially contemporaneous construction of Subchapter J's conduit principles by those with the expertise to appreciate and define the intent and purposes of the statutes. We also note that the regulation has been in existence without alteration for more than thirty years, and significantly, Congress has explicitly refused to amend the statutes to vitiate the regulation's effect. See section II B, supra. In fact, Congress refused to bring charitable distributions into the sections 661 and 662 conduit system. Furthermore, the Commissioner has consistently interpreted the regulation to prohibit any charitable distributions from being used as section 661(a)(2) deductions. E.g. Rev.Rul. 68-667, 1968-2 C.B. 289.[9] We also believe that treasury regulation Sec. 1.663(a)-2 reasonably implements the congressional intent to exclude charitable distributions from the workings of the conduit taxation system embodied in sections 661 and 662. As discussed earlier in section II B of this opinion, the tax benefits received for charitable bequests and distributions are bestowed by sections other than 661 and 662.
 
 
 53
 Based upon our application of the National Muffler factors and interpretation of Subchapter J's taxation purposes, we find that treasury regulation Sec. 1.663(a)-2 deserves our deference and is valid.
 
 
 54
 Our decision that treasury regulation Sec. 1.663(a)-2 is valid is also supported by the only other decisions on this issue. See Mott v. United States, 462 F.2d 512, 199 Ct.Cl. 127 (1972) (en banc), cert. denied, 409 U.S. 1108, 93 S.Ct. 902, 34 L.Ed.2d 688 (1973); Estate of O'Connor v. Commissioner, 69 T.C. 165 (1977) (en banc); Pullen v. United States, 45 A.F.T.R.2d 80-381 (D.Nev. Nov. 30, 1979), aff'd, No. 80-1034 (8th Cir. Sept. 29, 1980) (mem.). In each of the above cases the respective courts upheld the validity of regulation Sec. 1.663(a)-2 in spite of the fact that the losing party in each argued that section 661(a)(2) should be applied literally, the same argument the taxpayer propounds today. The Court of Claims in Mott stated, "any other rule would be an unreasonable interpretation of the statute." Mott, 462 F.2d at 517.[10] The Tax Court stated in O'Connor that allowing a charitable distribution to be deducted under section 661 "would be inconsistent with the statutory framework and overall legislative objectives of Subchapter J...." O'Connor, 69 T.C. at 178. And finally, the district court in Pullen observed that to allow "a second benefit from the same charitable distribution ... as a deduction under section 661(a)(2) is beyond the framework provided by Congress." Pullen, 45 A.F.T.R.2d at 80-385. While none of these cases are binding on us, we believe that they correctly decided the issue of the regulation's validity.
 
 
 55
 In light of case authority and additionally the analytical framework supplied by National Muffler, we hold that treasury regulation Sec. 1.663(a)-2 is valid and controlling. Therefore, the taxpayer is not entitled, as a matter of law, to a deduction under section 661(a)(2) for the distribution of present income when that distribution had already been the basis of an estate tax deduction under section 2055(a)(2). The district court's holding to the contrary must be reversed.
 
 IV.
 
 56
 We REVERSE the judgment of the district court in favor of taxpayer and REMAND this case for the entry of a judgment in favor of the IRS.
 
 
 
 [1]
 Chisholm's will also conveyed much of his personal and real property to his wife. The will also contained a residuary clause which provided that any remaining or accruing personal or real property not specifically assigned should pass in trust to the residual beneficiaries, i.e., Chisholm's wife, their children, and descendants of their children. U.S. Trust was named trustee under the will
 
 
 [2]
 This account was funded primarily from income derived from Chisholm's numerous interests in oil, gas, and sulphur leases. At all times the amount of current 1975 estate income in the account exceeded the amount distributed to the Foundation and that necessary to pay the estate's administrative costs. Furthermore, no beneficiary other than the Foundation had received any income or corpus from taxpayer
 
 
 [3]
 Section 2055(a)(2) reads in part:
 (a) For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate the amount of all bequests, legacies, devises, or transfers--
 * * *
 (2) to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes....
 
 
 [4]
 All citations to sections of the Code are contained in Title 26 of the United States Code
 
 
 [5]
 The amount of $1,240,467 represents the estate's distributable net income as calculated under section 643. The IRS concedes that the amount claimed as a deduction from gross income did not exceed the estate's distributable net income. The difference between the total cash distribution and the claimed income deduction, or $264,533, is the amount of corpus distributed to the Foundation. The distribution of corpus is not deductible under section 661. See part II B infra
 
 
 [6]
 The presumption embodied in sections 661 and 662 was adopted to eliminate the potential for manipulation encouraged by the pre-1954 tax system. The pre-1954 tax system required that each distribution be traced to either current income, and therefore it was taxable, or to corpus, and hence nontaxable. See H.R.Rep. No. 1337, 83rd Cong., 2d Sess. A199, reprinted in 1954 U.S.Code Cong. & Adm.News 4017, 4338-39. For an example of the potential tracing problems under the pre-1954 system, see generally Commissioner v. Dean, 102 F.2d 699 (10th Cir.1939)
 
 
 [7]
 Section 7805 provides:
 Except where such authority is expressly given by this title to any person other than an officer or employee of the Treasury Department, the Secretary or his delegate shall prescribe all needful rules and regulations for the enforcement of this title, including all rules and regulations as may be necessary by reason of any alteration of law in relation to internal revenue.
 
 
 [8]
 In fact, the taxpayer concedes that section 661 cannot be read literally to allow deduction of payments to creditors. The taxpayer, however, argues that section 661 must be applied literally to distributions to beneficiaries. Yet, the taxpayer's argument must fail in this case because it does not seek to take advantage of section 661(a)(1) which encompasses distributions to beneficiaries but wishes to utilize the catch-all provision of section 661(a)(2), i.e., "any amounts properly paid."
 
 
 [9]
 Revenue rulings are entitled to deference insofar as they represent the "studied view of the agency whose duty it is to carry out the statute." Miami Beach First National Bank v. United States, 443 F.2d 475, 478 (5th Cir.), cert. denied, 404 U.S. 984, 92 S.Ct. 447, 30 L.Ed.2d 367 (1971); accord Strick Corp. v. United States, 714 F.2d 1194, 1197 (3d Cir.1983), cert. denied, 466 U.S. 971, 104 S.Ct. 2435, 80 L.Ed.2d 819 (1984)
 
 
 [10]
 The Mott opinion goes on to say that Congress intended "to prevent all charitable distributions, whether or not deductible under 642(c), from entering into the operation of the distribution rules." Mott, 462 F.2d at 512. The Mott reached the above conclusion because "[t]racing of charitable distributions is still required under section 642(c), and to the extent that a charitable distribution is not paid out of gross income in accordance with the requirements of section 642(c)," then we think that Congress intended that no deduction is allowable [since sections 661 and 662 do away with the tracing requirement]. Id. at 518. As discussed earlier in our opinion, we agree with this reasoning